FILED

KENNETH DONALD MC CURDY                              IN PRO-PER

NAME

C-76230

PRISON IDENTIFICATION/BOOKING NO.

ED-184-L P.O.Box 689

ADDRESS OR PLACE OF CONFINEMENT

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED
CLERK, U.S. DISTRICT COURT
JUL 20 2007
CENTRAL DISTRICT OF CALIFORNIA
BY

Soledad, Ca.    93960-0689

Note:    It is your responsibility to notify the Clerk of Court in writing of any
change of address. If represented by an attorney, provide his/her name,
address, telephone and facsimile numbers, and e-mail address.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CASE NUMBER:

CV    CV07 04732    PSG    (MLG)

To be supplied by the Clerk of the United States District Court

C  07  5084    CW

☐ AMENDED

FULL NAME (Include name under which you were convicted)

Kenneth Donald McCurdy                    Petitioner

v.

Ben Curry, Warden (A)
Jim Tilman, Secretary CDCR
Board of Parole Hearings, et al:

NAME OF WARDEN, SUPERINTENDENT, JAILOR OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER

Respondent.

### PETITION FOR WRIT OF HABEAS CORPUS
### BY A PERSON IN STATE CUSTODY
28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION    KERN COUNTY

PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(List by case number)

CV  _____

CV  _____

### INSTRUCTIONS - PLEASE READ CAREFULLY

1.    To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.    In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge the judgment entered by a different California state court, you must file a separate petition.

3.    Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.    Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5.    You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

5.    You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

6.    When you have completed the form, send the original and two copies to the following address:

Clerk of the United States District Court for the Central District of California
United States Courthouse
ATTN: Intake/Docket Section
312 North Spring Street
Los Angeles, California 90012

DOCKETED ON CM

JUL 27 2007

BY

RECEIVED
CLERK, U.S. DICTRICT COURT
JUL 18 2007
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

PLEASE COMPLETE THE FOLLOWING: (*Check appropriate number*)

This petition concerns:
1. ☐ a conviction and/or sentence.
2. ☐ prison discipline.
3. ☒ a parole problem.
4. ☐ other.

## PETITION

1. Venue
   a. Place of detention _____California Training Facility (CTF Central)Soledad,Ca._____
   b. Place of conviction and sentence _____Kern County_____15 Years to Life_____

2. Conviction on which the petition is based (*a separate petition must be filed for each conviction being attacked*).
   a. Nature of offenses involved (*include all counts*): _____Homicide 2nd. Degree_____
   _____
   _____
   b. Penal or other code section or sections: _____PC # 187_____
   _____
   _____
   c. Case number: _____25682_____
   d. Date of conviction: _____September 22,1983_____
   e. Date of sentence: _____September 22, 1983_____
   f. Length of sentence on each count: _____15 Years to Life_____
   _____

   g. Plea (*check one*):
      ☐ Not guilty
      ☒ Guilty
      ☐ Nolo contendere
   h. Kind of trial (*check one*):
      ☐ Jury
      ☒ Judge only

3. Did you appeal to the California Court of Appeal from the judgment of conviction?   ☒ Yes  ☐ No
   If so, give the following information for your appeal (*and attach a copy of the Court of Appeal decision if available*):
   a. Case number: _____FO 52581_____
   b. Grounds raised (*list each*):
      (1) _____DUE PROCESS:      See attached Page 2-A_____

1  The Boards Continued use of the Commitment Offence and
2  referals to the Probation Officer's report of 1983 does
3  not comport with in the standards of "SOME EVIDENCE"
4  and the continued denial of parole based upon those
5  issues the Board of Parole Hearings, here-after refered to
6  as the BPH, Violated the Plaintiff's Constitutional Rights
7  of the State of California and the United States of
8  America , to wit: **FOURTEENTH AMENDMENT.** (14th Amendment)
9  The BPH's continued use of past factors that the petitioner
10 can never change does not meet within the standard set forth
11 by the California State Legislator's setting of the **Matrix**
12 **System,** where-as the petitioner has exceed all matrix with
13 in the guide lines set forth, In fact the petitioner has
14 exceeded even the most horrendous standard set for 15 years
15 to Life sentence for the crime of 2nd. Degree Homicide
16 which based upon the afore mentioned **Matrix** the time
17 line is set at 15 years, 17 years and 21 years, the
18 Petitioner is currently in the 28th year  of confinement
19 which far exceeds the Plea Bargain expectations of the
20 petitioner.
21
22
23
24
25
26
27
28

(2) ___LIBERTY INTEREST_____see attached page 3-A___

(3) _____

(4) _____

(5) _____

(6) _____

c.  Date of decision: ___April 12, 2007_____

d.  Result _____Denied_____

_____

4.  If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal

decision?  ☒ Yes  ☐ No

If so give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

a.  Case number: ___S151982_____

b.  Grounds raised *(list each)*:

(1) ___DUE PROCESS_____

(2) ___LIBERTY INTEREST_____

(3) _____

(4) _____

(5) _____

(6) _____

c.  Date of decision: ___June 27, 2007_____

d.  Result _____Denied_____

_____

5.  If you did not appeal:

a.  State your reasons _____

_____

_____

_____

_____

b.  Did you seek permission to file a late appeal?  ☐ Yes  ☒ No

6.  Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?

☒ Yes  ☐ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

1 " LIBERTY INTEREST"

2 The Petitioner has a Vested Interest in Parole, The BPH's

3 continued use of unchanging factors and relying only on

4 factors that the petitioner has no control over and can

5 never meet under-mines the Liberty Interest of the petit-

6 ioner set forth by Constitutional Law to wit:

7 **FOURTEENTH AMENDEMNT** (14th Amendment of the United States

8 of America).

9 "The Due Process of the Fourteenth Amendment prohibits

10 state action that deprives a person of **LIFE,LIBERTY, or**

11 **PROPERTY** without due process of law.(U.S. CONST.,14thAmend)

12 A person alleging a due process violation must first

13 demonstrate that he or she was deprived of a liberty or

14 property interest protected by the Due Process Clause and

15 then show that the procedures attendant upon the deprivation

16 were not constitutionally sufficent. as set forth under

17 **Kentucky Dep't of Corrections v. Thompson** (*1989), 490 U.S.

18 454,459-460:

19 **McQUILLION V. DUNCAN** (9th Cir. 2002) 306 F.3d 895,900.

20 The United States Supreme Court recogizes a federal due

21 process liberty interest in parole.

22 **GREENHOLTZ v. INMATES of NEBRASKA PENAL** (1979) U.S. 1,7.)

23 The court held in 1979 and reaffirmed in 1987 that "a

24 states statutory scheme, if it uses mandatory language,

25 creates a presumption that parole release will be granted

26 when or unless certain designated findings are made, and

27 thereby gives rise to a constitutional liberty interest.

28

a. (1) Name of court: Superior Court of California County of Kern

   (2) Case number: HCOO9667SA

   (3) Date filed (or if mailed, the date the petition was turned over to the prison authorities for mailing): December 8, 2007

   (4) Grounds raised (list each):

      (a) Due Process, Violation of Plea Agreement

      (b) Liberty Interest: Destruction of Plea Records.

      (c)

      (d)

      (e)

      (f)

   (5) Date of decision: March 20, 2007

   (6) Result: Denied

   (7) Was an evidentiary hearing held?    ☐ Yes  ☒ No

b. (1) Name of court:

   (2) Case number:

   (3) Date filed (or if mailed, the date the petition was turned over to the prison authorities for mailing):

   (4) Grounds raised (list each):

      (a)

      (b)

      (c)

      (d)

      (e)

      (f)

   (5) Date of decision:

   (6) Result:

   (7) Was an evidentiary hearing held?    ☐ Yes  ☐ No

c. (1) Name of court:

   (2) Case number:

   (3) Date filed (or if mailed, the date the petition was turned over to the prison authorities for mailing):

   (4) Grounds raised (list each):

      (a)

      (b)

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

(7) Was an evidentiary hearing held?    ☐ Yes   ☐ No

7.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the facts supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

CAUTION:   *Exhaustion Requirement*: In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court. This means that, prior to seeking relief from the federal court, you first must present all of your grounds to the California Supreme Court.

**DUE PROCESS**

a.  Ground one: _____

LIBERTY INTEREST

(1) Supporting FACTS:  On September 7, 2006 The Board of Parole Hearings represented by the Commissioner of the Parole Board Mr. James Davis and Deputy Commissioner Ms. Noreen Blonien, violated the petitioner's due process by using unchanging factors for grounds of unsuitability and a danger to society.

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☒ Yes   ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☒ Yes   ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☒ Yes   ☐ No

b.  Ground two:  **LIBERTY INTEREST** _____

_____

(1) Supporting FACTS: The BPH's continued use of out dated information and overlooking the current reports that was rendered by the petitioner and evidenced by the records of fact to wit: Dr. M. Macomber, Ph.D. Correctional Psychologist and counter-signed by B. Zika, Ph.D. Senior Psychologist, See Exhibit "A"

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☒ Yes   ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☒ Yes   ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☒ Yes    ☐ No

c.  Ground three: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

| | | |
|---|---|---|
| (2) Did you raise this claim on direct appeal to the California Court of Appeal? | ☐ Yes | ☐ No |
| (3) Did you raise this claim in a Petition for Review to the California Supreme Court? | ☐ Yes | ☐ No |
| (4) Did you raise this claim in a habeas petition to the California Supreme Court? | ☐ Yes | ☐ No |

d.  Ground four: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

| | | |
|---|---|---|
| (2) Did you raise this claim on direct appeal to the California Court of Appeal? | ☐ Yes | ☐ No |
| (3) Did you raise this claim in a Petition for Review to the California Supreme Court? | ☐ Yes | ☐ No |
| (4) Did you raise this claim in a habeas petition to the California Supreme Court? | ☐ Yes | ☐ No |

e.  Ground five: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

| | | |
|---|---|---|
| (2) Did you raise this claim on direct appeal to the California Court of Appeal? | ☐ Yes | ☐ No |
| (3) Did you raise this claim in a Petition for Review to the California Supreme Court? | ☐ Yes | ☐ No |
| (4) Did you raise this claim in a habeas petition to the California Supreme Court? | ☐ Yes | ☐ No |

8. If any of the grounds listed in paragraph 7 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: _____

_____

_____

9. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐ Yes    ☒ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a. (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

(7) Was an evidentiary hearing held?    ☐ Yes  ☐ No

b. (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

EXHIBIT

"1"

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF KERN

**JUDGES**

Gary T. Friedman
Clarence Westra, Jr.
James M. Stuart
Roger D. Randall
Arthur E. Wallace
Richard J. Oberholzer
John I. Kelly
Kenneth C.
Twisselman II
Robert Anspech
Stephen P. Gildner
Jerold L. Turner
Sidney P. Chapin
Lee P. Felice
Jon E. Stuebbe
Coleen W. Ryan
John L. Fielder
Sharon Mettler
Frank A. Hoover
Charles P. McNutt
H. A. "Skip" Staley
Charles B. Pfister
Michael B. Lewis
Michael G. Bush
Colette M. Humphrey

**COURT COMMISSIONERS**

James. L. Compton
Theresa A. Goldner
Ralph L. McKnight, Jr.
Louie L. Vega
Patrick M. Alderete

☒  1415 Truxtun Avenue, Rm. 212
Bakersfield, CA 93301-5222
(661) 868-4934

**SENIOR JUVENILE COURT REFEREE**

Peter A. Warmerdam

☐  1215 Truxtun Avenue
Bakersfield, CA 93301-4619
(661) 868-2450

**COURT EXECUTIVE OFFICER CLERK OF THE COURT**

Terry McNally

December 8, 2006

**KENNETH D. MCCURDY, CDC # C-76230**
**CORRECTIONAL TRAINING FACILITY**
**P.O. BOX  689**
**SOLEDAD, CA  93960-0689**

Dear Sir:

A Petition of Habeas Corpus has been filed with this court.   A conformed copy (front page) is enclosed with the date of filing and case number.   Your case has been assigned to:  Judge. JOHN I KELLY

Your case number is as follows:  **HC009667A**

If you need to contact this court please refer to the case number above.

TERRY MCNALLY, COURT EXECUTIVE OFFICER
SUPERIOR COURT COUNTY OF KERN

cc: file

EXHIBIT

"2"

IN THE

# Court of Appeal of the State of California

**IN AND FOR THE**

## Fifth Appellate District

COURT OF APPEAL
FIFTH APPELLATE DISTRICT
F I L E D

APR 1 2 2007

LEISA V. BIGGERS, CLERK/ADMINISTRATOR
By_____
Deputy

---

In re

    KENNETH D. McCURDY,

      On Habeas Corpus.

F052581

---

BY THE COURT*:

    The "Petition For Writ Of Habeas Corpus," filed in this court on April 6, 2007, is denied.

_____ Acting P.J.

*Before Harris, Acting P.J., Cornell, J., and Dawson, J.

EXHIBIT

"3"

Court of Appeal, Fifth Appellate District - No. F052581
**S151982**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re KENNETH D. MCCURDY on Habeas Corpus.

The petition for review is denied.

**SUPREME COURT**
# FILED

JUN **2 7** 2007

Frederick K. Ohlrich Clerk

DEPUTY

**GEORGE**

Chief Justice

Kenneth D. McCurdy
C-76230  ED-184-L       IN PRO PER
P.O.Box 689
Sopledad,Ca.  93960-0689

SUPREME COURT COPY

S151982

RECEIVED
APR 2 0 2007
CLERK SUPREME COURT

SUPREME COURT
FILED

APR 20 2007

Frederick K. Ohlrich Clerk

DEPUTY

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA,        )
                                          )
        Plaintiff and Respondant,         ) CASE #_____
                                          )
            V.                            ) FIFTH APPEALLANT
                                          ) CASE #___F052581____
Kenneth D. McCurdy                        )
                                          )
        Defendant and Appeallant.____     )

PETITION FOR REVIEW

After Decision by the Court of Appeal,
Fifth Appellate District
Filed April 12,2007

Kenneth D. McCurdy
C-76230  ED-1··L                    IN PRO PER
P.O.Box 689
Sopledad,Ca.  93960-0689

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA,       )
                                         )  CASE #_____
        Plaintiff and Respondant,        )
                                         )  FIFTH APPEALLANT
            V.                           )  CASE #__F052581_____
                                         )
Kenneth D. McCurdy                       )
                                         )
_____Defendant and Appeallant.____)

## PETITION FOR REVIEW

**After Decision by the Court of Appeal,
Fifth Appellate District
Filed April 12,2007**

# TABLE OF CONTENTS

| | Page. |
|---|---|
| Petition For Review | 1 |
| Jurisdiction and Questions  Presented | 2 |
| Cases and Case  Law Cited | 3 |
| Exhibit of Petition of Habeas Corpus from Fifth Appellate Court of Appeals Fresno California. | |

TABLE OF AUTHORITIES

Cases:

UNITED STATES CONSTITUTION:

in ref:  DUE PROCESS

         LIBERTY INTEREST


                    CASES CITED:

People V. Orin, (1975) 13 Cal. 3d 937,942,Cal. Rptr.65,53
p. 2d 193)


Ramirez,(2002) 94.Cal.App. 4 th 549,fn. 8 at 569.


Rosenkrantz, 80 Cal App. 4th at p. 425


Sass v. California Prison Terms


McQuillion v. Duncsn, F3d. 895,902  (2002)

Biggs v. Terhune  334 f3d 910,915 (2003)

Greenholtz v. Inmates of Neb. Penal & Coprrections

Pardons v. Allen  482 U.S. 369,377-78 (1987)

Name    KENNETH D. McCURDY

Address    EAST DORM  184-L

P.O.BOX 689

SOLEDAD,CA    93960-0689

CDC or ID Number    C-76230

## COURT OF APPEALS

### FIFTH DISTRICT OF CALIFORNIA
*(Court)*

| | |
|---|---|
| KENNETH D. McCURDY | **PETITION FOR WRIT OF HABEAS CORPUS** |
| Petitioner | |
| vs. | No. |
| B.CURRY,Warden (A) | *(To be supplied by the Clerk of the Court)* |
| California Training Facility | |
| Respondent  Board of Parole Hearings, | Superior Crt # HC 9667 A |
| J.Tilman,Secretary CDCR | Kern County |
| et al: | Bakersfield,Ca. |

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]        PETITION FOR WRIT OF HABEAS CORPUS        Penal Code § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

     A conviction                 XX  Parole

     A sentence                   Credits

     Jail or prison conditions      Prison discipline

     Other (specify)

1. Your name:     KENNETH D. McCURDY

2. Where are you incarcerated?     California Training Facility, Soledad, Ca.

3. Why are you in custody?    [XX] Criminal Conviction    [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

     Second Degree Homicide Penal Code § 187

   b. Penal or other code sections:     Penal Code § 187

   c. Name and location of sentencing or committing court:    Superior Court, Kern County

     1415 Truxton Ave. Bakersfield, California

   d. Case number:     25682

   e. Date convicted or committed:     September 22, 1983

   f. Date sentenced:     September 22, 1983

   g. Length of sentence:     15 Years to Life

   h. When do you expect to be released?  Parole After 10 to 12 Years.

   i. Were you represented by counsel in the trial court?  [XX] Yes.  [ ] No.  If yes, state the attorney's name and address:

     DANIEL RESNICK     ADDRESS IS UNKNOWN

                       NO LONGER A MEMBER OF CALIFORNIA BAR ASSC.

4. What was the LAST plea you entered? *(check one)*

   [ ] Not guilty  [XX] Guilty  [ ] Nolo Contendere  [ ] Other:

5. If you pleaded not guilty, what kind of trial did you have?

   [ ] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

6. GROUNDS FOR RELIEF
**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

VIOLATION OF CONSTITUTIONAL LAW:

Violation of the Fourteenth (14th) Amendment of the Constitution of

the United States:

DUE PROCESS

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

SEE ATTACHMENTS AND PAGE # 3 OF EXHIBIT #B

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

"[T]he process of plea bargaining... contemplates an agreement

negotiated by the People and the defendant agrees to plead guilty

in order to obtain a reciprocal benefit, generally consisting of a

"**Less Severe**"punishment than that which would result if he were

1  convicted of all offenses charged. **"PEOPLE v.ORIN** (1975) 13
2  Cal.3d 937,942,120 Cal.Rptr.65,53 p. 2d 193.)
3  In re: **Ramirez**,(2002) 94.Cal.App. 4th 549,fn. 8 at 569,[t]hat
4  "Inthis case,... [Petitioner] was convicted of second degree
5  homicide, When weighing the seriousness of his conduct to
6  wheither [Petitioner] would pose a threat to public safety
7  if paroled,the board is not free to disregard his 15 year
8  minimum term for second degree homicide... This sentence
9  reflect[s] both the Legislative determination of proportion
10 ality (Penal Code §1170,subd. (a) (1),and the trial courts
11 assessment of the seriousness of the offense.The Boards
12 discretion parole suitability determinations is not a
13 license to recharacterize the commitment offense as a crime
14 carrying a greater and more severe penalty. (**Rosenkrantz,**
15 **supra,**80 Cal App. 4th at p. 425)... Petitioner could have
16 been convicted of first degree murder and given 25 years to
17 life. However, the district attorney and the trial court,
18 acting within the guidelines of established by the
19 legislature, approved a commitment for second degree murder.
20 The Board must factor these discretionaryjudgmantsbyyoother
21 agencies of the justice system into its determination.If the
22 Board followed the governing case law the Board would have
23 been required to set the term as mandated under Penal Code
24 § 3041,subdivision (a), and to set his release/parole date
25 by the proportionally fixing his term.
26 Petitioner has served 24 years, 6 months and when the post
27 conviction credit application §2290 term served becomes
28 more than 30 years, more than double the mimimum of 15 years.

7. Ground 2 or Ground ___x___ *(if applicable)*

## Liberty Interest:

a. Supporting facts:

The United States Court of Appeals for the Ninth Cicuit has held that there is a Vested Liberty Interest in California inmates rights to parole. "if a state statute uses mandatory language" then Liberty Interest has to stand.

**SASS V. CALIFORNIA PRISON TERMS**, Circuit Judge Reinhardt, in dessenting," I am compelled to dissent from the majority's refusal to grant relief to a person whose continued incarceration **"runs contrary to the Rehabilitative goals espoused by the Prison System and could result in a Due Process Violation_"**

Petitioner further contends that the BPH has failed to show  and must show that the Petitioner**'PRESENTLY"** present a Danger to Society,See attached Exhibit "A" **MENTAL HEALTH EVALUATION FOR THE BOARD OF PRISON HEARINGS, SEPTEMBER, 2006 Lifer Calendar.**

b. Supporting cases, rules, or other authority:

McQuillion v. Duncan, F3d. 895,902 (2002)

Biggs v. Terhune  334 F3d 910,915 (2003)

Greenholtz v. Inmates of Neb. PenaL & Corr. Complex,442 U.S. 1,7

Pardons v. Allen, 482U.S. 369,377-78 (1987) quoting Greenholtz

442 U.S. at 12.

8. Did you appeal from the conviction, sentence, or commitment?    [XX] Yes.    [ ] No.    If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

**Appellate Dept. Superior Court, Kern County**

b. Result:    **DENIED**    c. Date of decision:    **2006**

d. Case number or citation of opinion, if known:    **HC 008560 A**

e. Issues raised:  (1)    **Breach of Contract, ie: Plea Bargain**

(2)    **Destruction of Plea Bargain Tape- Judges Chamber-**

(3)

f. Were you represented by counsel on appeal?    [ ] Yes.    [x] No.  If yes, state the attorney's name and address, if known:


9. Did you seek review in the California Supreme Court?    [ ] Yes.    [x] No.    If yes, give the following information:

a. Result:    b. Date of decision:

c. Case number or citation of opinion, if known:

d. Issues raised:  (1)

(2)

(3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

**This is a current issue resulting from the Parole Hearing of 2006**

**See California Board of Parole Hearings Exhibit "B"**

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

**California does not have a current CDCR 602 Process .**

**concerning Parole Board Actions.**


b. Did you seek the highest level of administrative review available?    [ ] Yes.    [X] No.

Attach documents that show you have exhausted your administrative remedies.

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____

  (2) Nature of proceeding (for example, "habeas corpus petition"): _____

  (3) Issues raised: (a) _____

    (b) _____

  (4) Result *(Attach order or explain why unavailable)*: _____

  (5) Date of decision: _____

  b. (1) Name of court: _____

  (2) Nature of proceeding: _____

  (3) Issues raised: (a) _____

    (b) _____

  (4) Result *(Attach order or explain why unavailable)*: _____

  (5) Date of decision: _____

  c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

**There is no delay in this action as the transcripts**

**were being transcribed and only delivered to Petitioner after**

**November 10,2006**

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

_____

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

**This is the proper Appellate Court for this action ,**

**The time line for review has been followed by the Plaintiff.**

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: **March 30,2007**

▶ *Kenneth W. McCurdy*
(SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]    **PETITION FOR WRIT OF HABEAS CORPUS**    Page six of six

# EXHIBIT

# "A"

INMATE COPY

**MENTAL HEALTH EVALUATION FOR**
**THE BOARD OF PRISON HEARINGS**
**September, 2006 Lifer Calendar**

**CORRECTIONAL TRAINING FACILITY SOLEDAD**
**JULY, 2006**

| | |
|---|---|
| **NAME:** | **McCURDY, KENNETH** |
| **CDC#:** | **C-76230** |
| **DOB:** | **8/15/41** |
| **OFFENSE:** | **PC 187 MURDER, SECOND DEGREE** |
| **DATE OF OFFENSE:** | **5/25/82** |
| **SENTENCE:** | **15 YEARS TO LIFE** |
| **MEPD:** | **3/2/92** |
| **EVALUATION DATE:** | **7/22/06** |

I.    **IDENTIFYING INFORMATION:**

Mr. Kenneth McCurdy is a 65 year old, fourth term, divorced, Caucasian male
from Kern County. He is a Christian. He has served ~~22~~ years in custody on this
offense.                                                          *23*

**SOURCES OF INFORMATION:**

This evaluation is based upon a single 90 minute interview, plus review of the
central and medical files.

The psychological evaluation, dated 8/15/01, by Dr. Reed, Psychologist at CTF-
Soledad, contains a Psychosocial Assessment. This information was reviewed
with the inmate and is still current and valid. As a result, this information will not
be repeated at this time.

**McCURDY, KENNETH**
C-76230
7/22/06
PAGE 2

## CLINICAL ASSESSMENT

**XII.   CURRENT MENTAL STATUS/TREATMENT NEEDS**

Mr. McCurdy related during the interview in an open, earnest, sincere, non-defensive and cooperative manner. His mental status was within normal limits. There was no evidence of any mental or emotional problems. His thinking was rational, logical, and coherent. Intellectually, he was functioning in the average ranges. His eye contact was good. His memory was intact. His judgment was intact. His insight and self-awareness was excellent.

Mr. McCurdy has a great deal of vocational experience in prison, as well as in the community. He currently is a quality control supervisor for the Furniture Manufacturing Program in PIA Industries. He has a letter indicating that he is a journeyman furniture manufacturer. He also has completed Vocational Meat Cutting in the institution and has taken another course upgrading that. He worked as a General Electrician in the institution for 12 years. Also, he is currently being certified as a forklift operator. In the community, he worked for 20 years as a truck driver and for 10 years in oil field construction in the Bakersfield area.

Mr. McCurdy does have a serious alcohol history in the community. He did abuse alcohol for over 20 years in the community. He was quite intoxicated on alcohol at the time of the commitment offense, which was a significant causal factor. He stated that the shock of realizing what he did in his intoxicated condition was so great, that he determined that he would never drink again. As a result, he has been clean and sober now for over 22 years. This is commendable, because there is alcohol available in the institution, and it is there for any inmate that is interested in it. The fact that he has remained clean and sober shows his determination to remain sober, and it also shows good self-control. Since he has not touched any alcohol in the last 22 years, this will not be listed as a current diagnostic problem.

Mr. McCurdy has attended AA and NA over the years. He has also completed Rational Recovery. He stated that the greatest benefit that he has ever received from any recovery program was through Rational Recovery, which taught him how to make responsible and positive decisions.

McCURDY, KENNETH
C-76230
7/22/06
PAGE 3

### CURRENT DIAGNOSTIC IMPRESSION

| | |
|---|---|
| Axis I: | No mental disorder |
| Axis II: | No personality disorder |
| Axis III: | No physical disorder |
| Axis IV: | Life term incarceration |
| Axis V: | Current GAF: 90 |

## XIII.  REVIEW OF LIFE CRIME

Mr. McCurdy accepts full responsibility for the commitment offense, in which the victim was shot during an argument over the victim's alleged child abuse history. Mr. McCurdy was thoroughly intoxicated on alcohol at the time of the commitment offense. As a result of his extreme intoxication, he does not have full recall of all the details of the commitment offense. However, he does accept total responsibility for this crime. He does not even want to blame the fact that he was thoroughly intoxicated. He stated that he is responsible for his decisions and for his actions, and he will accept the full consequences for these actions.

Mr. McCurdy stated that he is very sorry for this commitment offense. He stated that if he had not been drunk, he certainly would not have acted the way he did. As a result, he has a firm commitment to not drink again. He fully understands the horrible consequences that can occur if a person is intoxicated and not able to think clearly about stressful situations. Although he does have a serious criminal history, all of his crimes are related to his alcohol abuse and property offenses. This is the first violent crime that he has committed. Mr. McCurdy by nature is not an aggressive or violent individual. His feelings of remorse at the death of the victim appear to be quite sincere and genuine.

McCURDY, KENNETH
C-76230
7/22/06
PAGE 4

## XIV.  ASSESSMENT OF DANGEROUSNESS

A. In considering potential for dangerous behavior in the institution, Mr. McCurdy does have several disciplinaries for non-aggressive offenses. He has never engaged in institutional riots, possession of weapons, assaults on others, or other dangerous activity. He is 65 years of age, and in comparison to other inmates, potential for dangerous behavior is definitely below average.

B. In considering potential for dangerous behavior when released to the community, I agree with the previous evaluator that stated (after examining all of the factors in the case) that he poses no more risk to society than the average citizen in the community, if he remains alcohol free. This conclusion is supported by the administration of the Level of Service Inventory-Revised. This is an actuarial measure that assesses criminal history (in this case it is significant), alcohol use (which is also significant), current adjustment, vocational achievements, and other factors in prison in order to determine current risk level on parole. He obtained a score of 5.0 cumulative frequency for community offenders. This score means that if 100 men were released on parole, he would be expected to do better on parole than 95 of them. This is a very low risk level. In fact, since the actuarial measure does not consider his current age, which is 65, into the formula, he probably poses less risk to society than the average citizen in the community. Research done that evaluates the parole performance of individuals over the age of 55, indicates that they essentially never re-offend. At the age of 65, his potential for re-offense or parole violation is essentially nil.

C. Alcohol was a significant risk factor in the past. However, currently, there are no significant risk factors.

McCurdy              C-76230              CTF-Soledad              7/22/06

McCURDY, KENNETH
C-76230
7/22/06
PAGE 5

## XV.    <u>CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS</u>

There are no mental or emotional problems in this case that would interfere with routine parole planning. Mr. McCurdy has an excellent record of steady employment in the community, as well as in the institution. He has achieved in the institution three additional trades, which will enable him to secure employment in the community. This is in addition to his prior trades of truck driver and oil field construction. He is currently the quality control supervisor for PIA Industries, and he is considered a furniture manufacturing journeyman. Employment in this case will not be a problem. In addition, he has strong family support in the community. He has a son in Taft that has already purchased a mobile home for him, which is waiting for his release. Also, he has a job offer through his son, who is a supervisor for Western Wells in the oil fields. Mr. McCurdy has years of experience in that field, and he will be hired instantly upon his release. The prognosis for successful adjustment in the community is excellent.

M. Macomber, Ph.D.
Correctional Psychologist
Correctional Training Facility, Soledad

B. Zika, Ph.D.
Senior Psychologist
Correctional Training Facility, Soledad

**D:**    **7/22/06**
**T:**    **7/25/06**

EXHIBIT

"B"

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life  )
Term Parole Consideration  )       CDC Number C-76230
Hearing of:                )
                           )
KENNETH MCCURDY            )
_____)


CORRECTIONAL TRAINING FACILITY, SOLEDAD

SOLEDAD, CALIFORNIA

SEPTEMBER 7, 2006


PANEL PRESENT:

Mr. James Davis, Presiding Commissioner
Ms. Noreen Blonien, Deputy Commissioner

OTHERS PRESENT:

Mr. Kenneth McCurdy, Inmate
Ms. Mary Ann Tardiff, Attorney for Inmate
Two Correctional Officers, Unidentified

# INMATE
# COPY


CORRECTIONS TO THE DECISION HAVE BEEN MADE

        _____   No        See Review of Hearing
        _____   Yes       Transcript Memorandum



SUSAN R. SHABAZZ-PARRISH        Vine, McKinnon & Hall

ii

## INDEX

| | Page |
|---|---|
| Proceedings | 1 |
| Case Factors | 10 |
| Pre-Commitment Factors | 18 |
| Post-Commitment Factors | 27 |
| Parole Plans | 42 |
| Closing Statements | 49 |
| Recess | 55 |
| Decision | 56 |
| Adjournment | 59 |
| Transcriber Certification | 60 |

--oOo--

1

1        P R O C E E D I N G S

2        **DEPUTY COMMISSIONER BLONIEN:**  We are on tape.

3        **PRESIDING COMMISSIONER DAVIS:**  This is a Subsequent

4    Parole Consideration Hearing for Kenneth McCurdy, CDC

5    number C-76230.  Today's date is September 7, 2006.  We

6    are located at the Correctional Training Facility at

7    Soledad.  The inmate was received on November 14th, 1982

8    from Kern County.  The life term began on November 14th,

9    1982 and the Minimum Eligible Parole Date of March 2nd,

10    1992.  The controlling offense for which the inmate has

11    been committed is murder second, case number 25682, count

12    one, Penal Code Section 187 second.  The inmate received

13    a term of 15 years to life.  This hearing is being tape

14    recorded and for the purposes of voice identification we

15    will each state our first and last names, spelling of the

16    name.  And when it comes to you, Mr. McCurdy, if you will

17    also give us your CDC number, please, sir.  So I will

18    start and move to my left.  I am James Davis, D-A-V-I-S,

19    Commissioner.

20        **DEPUTY COMMISSIONER BLONIEN:**  I am Noreen Blonien,

21    B-L-O-N-I-E-N, I am the Deputy Commissioner.

22        **ATTORNEY TARDIFF:**  Mary Ann Tardiff, T-A-R-D-I-

23    double F, attorney for Mr. McCurdy.

24        **INMATE MCCURDY:**  Ken McCurdy, Charlie-76230.

25        **PRESIDING COMMISSIONER DAVIS:**  All right, thank you.

26    And let the record also reflect that we are joined by two

27    correctional officers here today who are here for the

2

1    purposes of voice identification and will not be actively

2    participating in the hearing.  Mr. McCurdy, in front of

3    you is the Americans With Disabilities Act Statement.

4    Would you please read that aloud, sir?

5        INMATE MCCURDY:  Yes, Sir.  Before we proceed any

6    further, I would like to know these gentlemen's name and

7    their badge numbers -- on --

8        PRESIDING COMMISSIONER DAVIS:  That's --

9        INMATE MCCURDY:  -- I'd like it on record.

10        PRESIDING COMMISSIONER DAVIS:  -- but that's not

11    required, and they are not --

12        INMATE MCCURDY:  It certainly is --

13        PRESIDING COMMISSIONER DAVIS:  -- answering to

14    anything.  So --

15        INMATE MCCURDY:  -- required.  Yes, it is.

16        PRESIDING COMMISSIONER DAVIS:  No, no it's not.  And

17    you -- I would like you to go ahead and proceed.

18        INMATE MCCURDY:  All right.

19        "The Americans With Disabilities Act, ADA, is

20        a law to help people with disabilities.

21        Disabilities are problems that make it harder

22        for some people to see, hear, breathe, talk,

23        walk, learn, think, work, or take care of

24        themselves that, than it is for others.

25        Nobody can be kept out of public but places or

26        activities because of a disability.  If you

27        have a disability, you have the right to ask

3

1          for help to get ready for your BPT Hearing,

2          get to the hearing, talk, read forms, papers,

3          and understand the hearing process.  BPT will

4          look at what you have asked for and make sure

5          that you have a disability that is covered by

6          ADA, and that you have asked for the right

7          kind of help.  If you do not get the help, or

8          if you do not think you got the kind of help

9          that you need, can ask for a B -- BPT Form

10         1074 Grievance Form.  You can also get help to

11         fill it out."

12    **PRESIDING COMMISSIONER DAVIS:**  All right, thank you.

13  And according to our records, together with staff from

14  the institution on 5/3 of '06 you reviewed and signed a

15  BPT Form 1073 indicating that you do not have any

16  disabilities that would qualify under the Americans With

17  Disabilities Act.  Is that correct?

18    **INMATE MCCURDY:**  Correct.

19    **PRESIDING COMMISSIONER DAVIS:**  And you read that

20  with glasses today.  Are those for reading?

21    **INMATE MCCURDY:**  Yes, they are.

22    **PRESIDING COMMISSIONER DAVIS:**  And they work all

23  right for you?

24    **INMATE MCCURDY:**  Brand new.

25    **PRESIDING COMMISSIONER DAVIS:**  And you can hear me

26  all right?

27    **INMATE MCCURDY:**  Yes, Sir.

4

1    PRESIDING COMMISSIONER DAVIS:  And you came here

2    today on your own steam?  You walked here, you are

3    healthy and ready to go?

4    INMATE MCCURDY:  I'm ready.

5    PRESIDING COMMISSIONER DAVIS:  Is there any reason

6    that you can think of that you would not be able to

7    actively participate in this hearing today?

8    INMATE MCCURDY:  Uh -- nah, but we're ready to go --

9    go ahead with it though.

10    PRESIDING COMMISSIONER DAVIS:  All right.

11    INMATE MCCURDY:  Not being completely prepared for

12    it.

13    PRESIDING COMMISSIONER DAVIS:  Uh -- what was that?

14    INMATE MCCURDY:  I'm thinking how I was -- I was not

15    able to fully prepare for this hearing.  I was at a

16    medical ducket (phonetic) from work.  They called me from

17    work for a medical ducket.  While I was over there they

18    called from there to me to report up here.  I don't have

19    any of my paperwork with me, or anything else.  I'm gonna

20    rely on what she's got there.

21    PRESIDING COMMISSIONER DAVIS:  Okay, what paperwork

22    are you missing?

23    INMATE MCCURDY:  Well, there was support letters --

24    uh -- a job offer, none of it is in my files.

25    DEPUTY COMMISSIONER BLONIEN:  Well, that's been

26    cleared up.

27    PRESIDING COMMISSIONER DAVIS:  Do you have copies of

5

1    that?

2        INMATE MCCURDY:  No, I don't have a copy of it.  I

3    gave them to the counselor.

4        PRESIDING COMMISSIONER DAVIS:  Okay.

5        INMATE MCCURDY:  The counselor was supposed to

6    handle it.

7        PRESIDING COMMISSIONER DAVIS:  The question is you -

8    - you said you didn't have papers with you that you have

9    back in your cell.

10       INMATE MCCURDY:  Well, I was trying to get the

11   paperwork from the counselor since I was scheduled to go

12   to, tomorrow.

13       DEPUTY COMMISSIONER BLONIEN:  Which paperwork

14   though, specifically.  Other than the --

15       INMATE MCCURDY:  Those, my support --

16       DEPUTY COMMISSIONER BLONIEN:  -- your letters.

17       INMATE MCCURDY:  -- letters, and --

18       DEPUTY COMMISSIONER BLONIEN:  Other than that.

19       INMATE MCCURDY:  Nothing other than --

20       DEPUTY COMMISSIONER BLONIEN:  Okay.

21       INMATE MCCURDY:  -- support letters and my -- and --

22   uh -- my -- uh -- employment -- uh -- offer.

23       DEPUTY COMMISSIONER BLONIEN:  All right, well we

24   have clear, we have got that taken care of.

25       INMATE MCCURDY:  All right.

26       PRESIDING COMMISSIONER DAVIS:  All right.  Is there

27   anything else that you were unable to obtain?

6

1    **INMATE MCCURDY:**  No.

2    **PRESIDING COMMISSIONER DAVIS:**  All right.  So other

3    than being able not, being able to get the letters which

4    I know that -- I was privy to counsel on the phone with

5    your counselor clearing that issue up.  Is there anything

6    else that you were not able to obtain by coming up here

7    at the time that you did?

8    **INMATE MCCURDY:**  No, everything else is fine.

9    **PRESIDING COMMISSIONER DAVIS:**  Alright, so you are

10   ready to proceed then.

11   **INMATE MCCURDY:**  Yes, Sir.

12   **PRESIDING COMMISSIONER DAVIS:**  All right.  And

13   counsel, you are satisfied with that, as well?

14   **ATTORNEY TARDIFF:**  Yes.

15   **PRESIDING COMMISSIONER DAVIS:**  All right, this

16   hearing is being conducted pursuant to Penal Code

17   Sections 3041 and 3042, and the Rules and Regulations of

18   the Board of Prison Terms governing Parole Consideration

19   Hearings for life inmates.  The purpose of today's

20   hearing is to once again consider the number and nature

21   of the crimes for which you were committed, your prior

22   criminal and social history, and your behavior in

23   programming since your commitment.  We have had the

24   opportunity to review your Central File and your prior

25   transcripts and you will be given an opportunity to

26   clarify the record as we proceed.  We will reach a

27   decision today and inform you of whether or not we find

1    you suitable for parole and the reasons for our decision.
2    If you are found suitable for parole, the length of your
3    confinement will be explained to you.  Nothing that
4    happens in today's hearing will change the findings of
5    the court.  The Panel is not here to retry your case.  We
6    are here for the sole purpose of determining your
7    suitability for parole.  Do you understand that, sir?
8         **INMATE MCCURDY:**  I'll pass.

9         **PRESIDING COMMISSIONER DAVIS:**  All right.  The
10   hearing will be conducted in two phases.  First I will
11   discuss and review the crime for which you were
12   committed, as well as your prior criminal and social
13   history.  Then Commissioner Blonien will discuss with you
14   your progress since your commitment, you counselor's
15   report, you Psychological Evaluation, Parole Plans, and
16   any letters of support or opposition as they may exist.
17   Once that is concluded, your -- your attorney will have
18   an opportunity to ask you questions.  Also, the
19   Commissioners will also be asking you questions.  Next,
20   your attorney will have an opportunity for a final
21   closing statement followed by your statement which should
22   focus on your suitability for parole.  California Code
23   Regulation states that regardless of time served, an
24   inmate shall be found unsuitable for, and denied parole,
25   if in the judgment of the Panel the inmate poses an
26   unreasonable risk of danger to society if released from
27   prison.  Now, you have certain rights.  Those rights

8

1    include the right to a timely notice of this hearing, the

2    right to review your Central File, and the right to

3    present relevant documents.  Counsel, are you satisfied

4    you client's rights have been met today?

5          **ATTORNEY TARDIFF:**  Yes.

6          **PRESIDING COMMISSIONER DAVIS:**  All right.  You have

7    an additional right and that is to be heard by an

8    impartial Panel.  You have heard Commissioner Blonien and

9    I introduce ourselves today.  Do you have any reason to

10   believe that we would not be impartial?

11         **INMATE MCCURDY:**  I'm gonna leave that for a later

12   comment.

13         **PRESIDING COMMISSIONER DAVIS:**  Well, you -- you

14   can't judge it on any decision one way or the other.  I

15   am assuming that will be a yes because you -- we have

16   never met, have we?

17         **INMATE MCCURDY:**  No, we have never met.

18         **PRESIDING COMMISSIONER DAVIS:**  And to the best of my

19   knowledge I have never had anything to do with any of

20   your prior cases, nor has Commissioner Blonien.

21         **INMATE MCCURDY:**  As far as I know.

22         **PRESIDING COMMISSIONER DAVIS:**  All right.  You will

23   receive a written copy of our Tentative Decision today.

24   That Decision becomes effective in 120 days.  A copy of

25   the Decision, and a copy of the transcript, will be sent

26   to you.  The Board has limited its appeal process.  If

27   you disagree with anything in today's hearing you have a

9

1    right to go directly to court with your complaint. Once

2    again, you are not required to admit your offense or

3    discuss your offense. However, again, the Panel does

4    accept the findings of the court to be true, however. Do

5    you understand these things?

6        INMATE MCCURDY: Yes, I do.

7        PRESIDING COMMISSIONER DAVIS: Commissioner Blonien,

8    are we going to be dealing with anything from the

9    Confidential File today?

10       DEPUTY COMMISSIONER BLONIEN: There is confidential

11   information in the file that we may use.

12       PRESIDING COMMISSIONER DAVIS: All right. I am

13   passing a checklist of documents to counsel. Would you

14   take a look at that and make sure we are operating off

15   the same checklist of documents?

16       ATTORNEY TARDIFF: Yes.

17       PRESIDING COMMISSIONER DAVIS: All right, thank you.

18       ATTORNEY TARDIFF: And I have nothing further to

19   submit.

20       PRESIDING COMMISSIONER DAVIS: All right. Very

21   well, we will mark this Exhibit one then, and if for some

22   reason we do use any of the confidential material, we

23   will tell you about that during the Decision process.

24       ATTORNEY TARDIFF: Okay.

25       PRESIDING COMMISSIONER DAVIS: Any preliminary

26   objections, counsel?

27       ATTORNEY TARDIFF: No.

10

1    **PRESIDING COMMISSIONER DAVIS:**  And will your client

2    be speaking with us today?

3    **ATTORNEY TARDIFF:**  Yes.

4    **PRESIDING COMMISSIONER DAVIS:**  All right, if you

5    raise your right hand a little, sir.  Do you solemnly

6    swear or affirm that the testimony you give at this

7    hearing will be the truth, and nothing but the truth?

8    **INMATE MCCURDY:**  Yes.

9    **PRESIDING COMMISSIONER DAVIS:**  All right, absent

10   objections I am going to incorporate by reference the

11   Probation Officer's Report, pages two through seven, and

12   then refer to the March 2005 Board Report for a summary

13   of the crime, as well as the inmate's version also listed

14   in there.  The summary of the crime is as follows,

15   starting on page one, item number one:

16   **INMATE MCCURDY:**  Excuse me.  Can we stipulate to the

17   reading?

18   **PRESIDING COMMISSIONER DAVIS:**  No.  But thank you,

19   anyway.

20       "On 8/26/82 the body of Samuel Timms, T-I-M-M-

21       S was found in a canal in the rural

22       Bakersfield.  An autopsy later determined that

23       the cause of death had been a gunshot wound to

24       the head.  On 7/7/82 a female identified as

25       Robin Karris, K-A-R-R-I-S, a former girlfriend

26       of McCurdy, contacted the Kern County

27       Sheriff's Office and informed -- or with

11

1   information of the events that occurred on the

2   evening of 5/25/82. She stated that McCurdy

3   committed the murder, and that she had known

4   of this since the day it was committed. She

5   stated that Timms entered a bar in Pumpkin, P-

6   U-M-P-K-I-N Center, where she, McCurdy, Glen

7   Karl, K-A-R-L, and Brenda Jolliff, J-O-L-L-I-

8   F-F, were drinking. McCurdy made the

9   statement that Timms had raped a friend's baby

10  and that he was going to get the individual.

11  She stated that McCurdy and Karl left the bar

12  and when she saw them later that evening,

13  McCurdy made the statement that he had quote,

14  "hit" close quotes, the victim. Later,

15  McCurdy, Karl, and the two females left the

16  bar to get something to eat. After they got

17  into the vehicle, McCurdy stated that he had

18  to do something first. He drove to a rural

19  area until they came to a man's corpse.

20  Karris stated that McCurdy made the statement

21  that he had enticed Timms out of the bar and

22  into Karl's vehicle. He hit Timms several

23  times and then shot him. McCurdy made the

24  statement that killing was quote, "what I do

25  for a living" close quotes. He was also

26  reported as making the statement that Timms

27  was not going to get away with raping a baby.

12

1     Karris also reported that McCurdy said that

2     his blood might be on the victim and

3     therefore, they were returning to the place of

4     the bod -- or returning to place the body in

5     the canal.  McCurdy and Karl then located the

6     bloody body and -- or loaded, excuse me,

7     loaded the bloody body into the vehicle and

8     drove to the canal, where they stopped and

9     threw the body into the canal.  McCurdy told

10    others that the car -- or in the car, that if

11    they ever talked he would kill them.  Then

12    they drove to Karris' apartment where the

13    females cleaned up the car.  McCurdy directed

14    her to turn Timms -- or to burn Timms' wallet.

15    They all spent the night at the apartment.

16    That morning a friend, a William Stafford,

17    came to the apartment and told McCurdy that

18    the body had been found.  Stafford took

19    McCurdy's and Karl's clothing and the murder

20    weapon to dispose of them.  McCurdy and Karl

21    then bought new boots and Karl changed tires

22    of the vehicle -- or on the vehicle so that

23    they would not be identified.  Shortly

24    thereafter, McCurdy and Karl drove Karris to

25    Michigan.  Later, all three returned to

26    Bakersfield separately.  On June 6th -- or

27    July 6th, 1982 sheriff's deputies contacted

13

1    Stafford.  While he denied any knowledge of

2    the homicide at first, he eventually admitted

3    that he disposed of some of the clothing and

4    had hid the murder weapon.  He led deputies to

5    a 22-caliber revolver hidden on his property.

6    Officers located Karl and Jolliff and

7    questioned them. Jolliff gave a statement and

8    essentially agreed with the information from

9    Karris, and McCurdy -- that McCurdy had

10   committed the murder.  McCurdy and Karl

11   disposed of the body.  And Stafford had

12   disposed of some of the evidence.  Karl stated

13   that Timms was lured out of the bar by a

14   female recruited for the -- for that purpose

15   by McCurdy, and then forced into Karl's

16   vehicle.  Karl stated that he thought that

17   McCurdy was getting Timms out of the vehicle

18   to beat him up, then McCurdy unexpectedly shot

19   him.  He stated that he did not see McCurdy

20   shoot Timms.  He admitted his complicity in

21   disposing of the body.  McCurdy was not

22   located until May 13, 1983 when he contacted

23   the Phoenix Arizona Police Department and

24   advised them that he was wanted for murder in

25   Kern County.  He was arrested the next day.

26   It was initially charged -- he was initially

27   charged with kidnap, 207 PC use of a firearm,

14

1     12025 -- 1222.5 PC, and it goes on to list the

2     various and sundry charges, and so forth, and

3     which one was stricken, and so forth."

4  Under -- it does -- it does have your version, and I know

5  that your version differs in a couple of areas from that.

6  Would you like to give us that in your own words?

7     **INMATE MCCURDY:**  No, I'd like for it to stay as --

8  stand as it is.

9     **PRESIDING COMMISSIONER DAVIS:**  Okay.

10    **INMATE MCCURDY:**  Uh --

11    **PRESIDING COMMISSIONER DAVIS:**  Then I will go ahead

12 and read it.  The prisoner's version is that In an

13 interview for this report, McCurdy stated that his

14 version of the circumstances of the commitment offense

15 remains the same as when he presented it in earlier

16 reports to BPT, and those reports specifically those

17 dated 6/1 and -- 6/01 and 1/91.  He stated that:

18    "At the time of the commitment offense he was

19    extremely intoxicated and had very little

20    recollection of the events that occurred that

21    day.  He pleaded guilty to the murder charge.

22    He admitted that he was guilty of the crime,

23    and offered in mitigation only the fact that

24    the victim was a known convicted child

25    molester.  He stated that he had not been

26    under the influence of alcohol at the time --

27    or I'm sorry, he stated that had he not been

1    under the influence of alcohol at the time, he

2    would probably have beaten the victim with his

3    fist and would not have used a weapon.  He

4    stated that he has -- that what he had done

5    was a terrible wrong, and he expressed remorse

6    for his actions.  He indicated that although

7    he had a prior felony conviction, none of

8    those involved violence or weapons.  In an

9    interview for his 6/2001 Board Report, McCurdy

10   indicated that he disagreed with some of the

11   information presented in the Probation

12   Officer's report.  He stated that it was Glen

13   Karl who put Timms into the car, not McCurdy.

14   He also indicated that he never made the

15   statement that killing was what he did for a

16   living.  He also stated that his crime

17   partner, Glen Karl, was sentenced to only one

18   year in the county jail because he made a deal

19   with the DA in exchange for his testimony

20   against McCurdy.  He also denied ever telling

21   any of the witnesses that if they told he

22   would kill them."

23   **PRESIDING COMMISSIONER DAVIS:**  Does that --

24   **INMATE MCCURDY:**  Okay.

25   **PRESIDING COMMISSIONER DAVIS:**  -- effectively cover

26   it?

27   **INMATE MCCURDY:**  Right.

16

1    PRESIDING COMMISSIONER DAVIS:  Okay.  Is there

2  anything that you would like to add to that, amplify on?

3    INMATE MCCURDY:  Uh -- -- uh -- I don't think -- I

4  don't think so.  I think that pretty much --

5    PRESIDING COMMISSIONER DAVIS:  Says it all?

6    INMATE MCCURDY:  -- says it all there -- uh -- as to

7  the --

8    PRESIDING COMMISSIONER DAVIS:  How did you learn

9  that the victim was a -- was a convicted child molester?

10    INMATE MCCURDY:  Well, for one thing -- for one

11  reason he was arrested for it.

12    PRESIDING COMMISSIONER DAVIS:  And how did you learn

13  he was convicted of it?

14    INMATE MCCURDY:  It was -- it was -- everybody in

15  town knew that he -- he had been -- whenever he was

16  arrested for raping my girlfriend's little girl.

17    PRESIDING COMMISSIONER DAVIS:  So did you --

18    INMATE MCCURDY:  It was in the papers.  It was --

19  you know -- they made a -- a pretty big deal out of it in

20  the news media, that he was a five time convicted child

21  molester.

22    PRESIDING COMMISSIONER DAVIS:  And he was convicted

23  of this other crime?

24    INMATE MCCURDY:  He -- well he was, when he -- when

25  this happened, he was out on bail.

26    PRESIDING COMMISSIONER DAVIS:  Okay.  And you read

27  that in the newspaper and heard it from other people.

17

1    **INMATE MCCURDY:**  Well, my girlfriend told me about

2    it also.

3    **PRESIDING COMMISSIONER DAVIS:**  Was there a reason

4    why you thought you needed to take the revenge for that

5    in your own hands?

6    **INMATE MCCURDY:**  Uh -- it's hard to say because in -

7    - in the culture that I was raised up in; one side of my

8    family was Mormons and the other side was Pentecostal,

9    and if someone wronged your family, you dealt with it.

10   That was accepted --

11   **PRESIDING COMMISSIONER DAVIS:**  Even if the law was

12   handling it at the time?

13   **INMATE MCCURDY:**  Uh -- evidently the law didn't

14   handle it at the time because he had been convicted four

15   other times and he never got -- never did anything.  They

16   kept turning him loose.

17   **PRESIDING COMMISSIONER DAVIS:**  Okay, he was out on

18   bail at the time, you say.

19   **INMATE MCCURDY:**  Yes.

20   **PRESIDING COMMISSIONER DAVIS:**  So they had -- he

21   hadn't -- he had yet to stand trial.

22   **INMATE MCCURDY:**  As -- as far as I -- that's the way

23   I understand it.

24   **PRESIDING COMMISSIONER DAVIS:**  Okay.

25   **INMATE MCCURDY:**  I'm not -- that I don't know for

26   sure or for a fact.  I mean, that just -- that was my

27   understanding.

18

1    PRESIDING COMMISSIONER DAVIS:  All right, in terms

2    of personal factors, you were born in Waco, Texas.  Now,

3    are you divorced from your fourth wife, right now?

4    INMATE MCCURDY:  Yes.

5    PRESIDING COMMISSIONER DAVIS:  And you have -- this

6    says you have several children.  How many children do you

7    have?

8    INMATE MCCURDY:  I have four children.

9    PRESIDING COMMISSIONER DAVIS:  You have four

10   children, okay.  Are they all still doing well?  Doing

11   okay?

12   INMATE MCCURDY:  I -- my four boys are doing well.

13   I have some step-children and -- and one of my step-sons

14   are -- is dying right now.  Forty-two years old and dying

15   from cancer.

16   PRESIDING COMMISSIONER DAVIS:  Oh, sorry to hear

17   that.

18   INMATE MCCURDY:  Yeah.

19   PRESIDING COMMISSIONER DAVIS:  Are you in contact

20   with your children?

21   INMATE MCCURDY:  Yes, I am.

22   PRESIDING COMMISSIONER DAVIS:  And do you write

23   them, call them?

24   INMATE MCCURDY:  Call them and write them --

25   PRESIDING COMMISSIONER DAVIS:  All the above.

26   INMATE MCCURDY:  -- all the time.

27   PRESIDING COMMISSIONER DAVIS:  Okay, is that -- from

19

1    them -- some of your support letters are from?

2         INMATE MCCURDY:  Yes.

3         PRESIDING COMMISSIONER DAVIS:  Okay.  You have

4    several half-brothers and sisters.  Do you also keep in

5    contact with them?

6         INMATE MCCURDY:  Uh -- most of them are all dead

7    now.

8         PRESIDING COMMISSIONER DAVIS:  Okay.  You completed

9    eight years of formal education and received your GED,

10   and completed several years of college courses while

11   incarcerated.  Have you found education to be something

12   that is useful for you?

13        INMATE MCCURDY:  Yes, it's ongoing.

14        PRESIDING COMMISSIONER DAVIS:  Good.  Good for you.

15   You served in the United States Army from 1958 to 1960.

16   Did you receive an honorable discharge?

17        INMATE MCCURDY:  Yes, I did.

18        PRESIDING COMMISSIONER DAVIS:  Okay.  What did you

19   do in the Army?

20        INMATE MCCURDY:  Truck driver.

21        PRESIDING COMMISSIONER DAVIS:  Now you had a general

22   discharge to start with and it was upgraded to --

23        INMATE MCCURDY:  Honorable, upgraded to honorable

24        PRESIDING COMMISSIONER DAVIS:  -- honorable.  Was

25   there a problem?

26        INMATE MCCURDY:  Well, it was medical.  The alcohol.

27        PRESIDING COMMISSIONER DAVIS:  Alk -- you were

1    drinking too much?

2        INMATE MCCURDY:  Yes.

3        PRESIDING COMMISSIONER DAVIS:  Okay, did you have an

4    accident while you were a truck driver or anything?

5        INMATE MCCURDY:  Uh -- no.  Didn't have an accident.

6    I just -- uh -- AWOL a couple of times from -- uh -- not

7    reporting back to camp when I was supposed to. The

8    drinking.

9        PRESIDING COMMISSIONER DAVIS:  Okay.  Previous

10   employment includes predominantly as a truck driver, and

11   oil field worker.

12       INMATE MCCURDY:  Yes.

13       PRESIDING COMMISSIONER DAVIS:  Okay, so alcohol was

14   a problem for you before you -- before you were

15   incarcerated, is that correct?

16       INMATE MCCURDY:  Yes.

17       PRESIDING COMMISSIONER DAVIS:  Okay, so you

18   recognize that?

19       INMATE MCCURDY:  Yes, I do.

20       PRESIDING COMMISSIONER DAVIS:  And you have been

21   actively participating in AA and so forth and getting --

22       INMATE MCCURDY:  Up until last --

23       PRESIDING COMMISSIONER DAVIS:  -- a lot out of it?

24       INMATE MCCURDY:  -- year.

25       PRESIDING COMMISSIONER DAVIS:  Okay.  Any

26   drugs?

27       INMATE MCCURDY:  No.  Just the alcohol.  Yeah,

21

1    and just mainly beer.

2    **PRESIDING COMMISSIONER DAVIS:**  Of course some people

3    consider alcohol a drug, too, I guess that--

4    **INMATE MCCURDY:**  Yes.

5    **PRESIDING COMMISSIONER DAVIS:**  -- that's a whole

6    other issue.  In terms of arrest record, on October 6th,

7    1960, you were sentenced to prison in Texas for car

8    theft.  And you were paroled in 1961.  So were you -- and

9    you were able to -- okay, so you were out of the Army by

10   that time.

11   **INMATE MCCURDY:**  Yes, I was out.

12   **PRESIDING COMMISSIONER DAVIS:**  You were out of the

13   Army in '60 --

14   **INMATE MCCURDY:**  Yes out of the Army.

15   **PRESIDING COMMISSIONER DAVIS:**  -- so you were out of

16   the Army.  October 19th, 1964, you were committed to

17   prison in Eureka, California for forgery?

18   **INMATE MCCURDY:**  Yes.

19   **PRESIDING COMMISSIONER DAVIS:**  What did you -- what

20   did you forge?

21   **INMATE MCCURDY:**  I didn't.

22   **PRESIDING COMMISSIONER DAVIS:**  You didn't.

23   **INMATE MCCURDY:**  It was a NSF check.

24   **PRESIDING COMMISSIONER DAVIS:**  Okay.

25   **INMATE MCCURDY:**  And, but then it was alcohol

26   related.  I went to the Safeway store and bought some

27   booze and -- uh -- wrote a check on my account that

22

1    didn't have enough money to cover it, and I didn't know

2    about it.  I left out and I come back and I got arrested.

3        PRESIDING COMMISSIONER DAVIS:  And you went to

4    prison?

5        INMATE MCCURDY:  Yes, I did.

6        PRESIDING COMMISSIONER DAVIS:  And you only wrote

7    one check?

8        INMATE MCCURDY:  Yes, I did.

9        PRESIDING COMMISSIONER DAVIS:  That would be a

10    little un -- it would certainly be a little unusual

11    today.  But one check and you went to prison, huh?

12        INMATE MCCURDY:  Yeah, well, they -- they said I had

13    -- uh -- that I left town knowing that I had a bad check,

14    and all.  They made --

15        PRESIDING COMMISSIONER DAVIS:  Huh.

16        INMATE MCCURDY:  -- a big deal out of it, and I went

17    to prison for it.

18        PRESIDING COMMISSIONER DAVIS:  Okay.

19        INMATE MCCURDY:  So --

20        PRESIDING COMMISSIONER DAVIS:  What about the -- the

21    car theft in '60?  Was that also alcohol related?

22        INMATE MCCURDY:  Pretty much.

23        PRESIDING COMMISSIONER DAVIS:  What, how so?  In

24    what way?

25        INMATE MCCURDY:  Well, it was -- we was all out car

26    racing, and -- uh -- there was a car sitting there that I

27    thought would be faster than the one I was in, so I took

23

1    it and tried it.

2        **PRESIDING COMMISSIONER DAVIS:**  Okay, so you were

3    paroled from the -- for what you say was the NSF check in

4    1966, and then in 1969 you were sentenced to Washington

5    State Prison for grand larceny.

6        **INMATE MCCURDY:**  Uh-huh.

7        **PRESIDING COMMISSIONER DAVIS:**  And what was the

8    grand larceny?

9        **INMATE MCCURDY:**  That was another taking a car

10   without -- but I had permission to take the car, I just

11   kept it longer than what they thought I should.

12       **PRESIDING COMMISSIONER DAVIS:**  And how long did you

13   stay in prison that time?

14       **INMATE MCCURDY:**  Uh -- a year and a half.

15       **PRESIDING COMMISSIONER DAVIS:**  So, until about maybe

16   '71 there -- thereabouts?

17       **INMATE MCCURDY:**  Thereabouts.

18       **PRESIDING COMMISSIONER DAVIS:**  Then in 1980, July of

19   '80 you were arrested in Bakersfield for grand theft

20   again.

21       **INMATE MCCURDY:**  That was because I was in a vehicle

22   that someone else was stealing some tires and stuff, and

23   I had -- I was passed out in the back seat of the

24   vehicle.

25       **PRESIDING COMMISSIONER DAVIS:**  So you -- but you

26   pled guilty --

27       **INMATE MCCURDY:**  Didn't have any choice.

24

1      **PRESIDING COMMISSIONER DAVIS:**  -- and you received -
2   - you received two years probation.

3      **INMATE MCCURDY:**  Yes.

4      **PRESIDING COMMISSIONER DAVIS:**  Okay, any other
5   arrests or other contact with law enforcement?

6      **INMATE MCCURDY:**  Nothing other than just driving,
7   you know, and stopping --

8      **PRESIDING COMMISSIONER DAVIS:**  Vehicles getting
9   pulled over?

10      **INMATE MCCURDY:**  -- down -- I mean, you know just
11   stopping me on the road driving.

12      **PRESIDING COMMISSIONER DAVIS:**  Were you passed out
13   in the back of this car in 1980 as a result of drinking
14   too much?

15      **INMATE MCCURDY:**  Yep.

16      **PRESIDING COMMISSIONER DAVIS:**  So alcohol is a
17   significant problem for you all the way through.

18      **INMATE MCCURDY:**  Been -- been a big problem up until
19   the time of this incident.

20      **PRESIDING COMMISSIONER DAVIS:**  Okay, is there
21   anything that we have not talked about in terms of your -
22   - your social history with your -- your history prior to
23   coming to the institution?  Your arrest records, anything
24   that you think is pertinent for --

25      **INMATE MCCURDY:**  Well --

26      **PRESIDING COMMISSIONER DAVIS:**  -- this Panel to
27   understand?

25

1    **INMATE MCCURDY:**  -- even though I had a bad alcohol

2    problem, and the in -- the environment that I was in

3    helped that because I -- I played music and at that time

4    I was playing music in the bars and stuff, at night and

5    on the weekends.

6    **PRESIDING COMMISSIONER DAVIS:**  What did you play

7    there?

8    **INMATE MCCURDY:**  I play -- I play all string

9    instruments.  I play guitar, mandolin and banjo.

10   **PRESIDING COMMISSIONER DAVIS:**  Okay.

11   **INMATE MCCURDY:**  I play all of them.  Uh -- during

12   the -- during the day I was working in the oil field or

13   driving trucks and then go play music at night and stuff.

14   But I was always around the alcohol.  And -- uh -- that

15   was a big part of my life.  Uh -- I really don't remember

16   any other lifestyle other than that.  From the time I was

17   a teenager, I started playing music and -- and -- uh --

18   going to you know, at parties and stuff.  And -- uh --

19   **PRESIDING COMMISSIONER DAVIS:**  Do you think part of

20   the motivation for the crime that brought you here was in

21   trying to impress the people that you were with?

22   **INMATE MCCURDY:**  It's possible.  I've done a lot of

23   -- I really don't have all that recall of that night.

24   **PRESIDING COMMISSIONER DAVIS:**  You had been drinking

25   a lot?

26   **INMATE MCCURDY:**  Probably before about two weeks,

27   pretty steady.

1      PRESIDING COMMISSIONER DAVIS:  How come?

2      INMATE MCCURDY:  My wife and I had just busted up,

3   and I was down at the bar and hanging out with this ex-

4   girlfriend -- uh -- I don't remember that much of it.

5   Her and I was living -- I was staying with her at her

6   apartment which was attached to the bar.

7      PRESIDING COMMISSIONER DAVIS:  Uh-huh.

8      INMATE MCCURDY:  So it was just a matter of walking

9   out of her door into the bar room door.  Uh -- and like I

10   said, I don't -- I don't -- I don't -- I really don't

11   have total recall of what happened.  I didn't know I

12   killed a man until the next morning and they told me

13   about it.

14      PRESIDING COMMISSIONER DAVIS:  And so you don't

15   remember pulling the trigger --

16      INMATE MCCURDY:  I do not --

17      PRESIDING COMMISSIONER DAVIS:  -- on the gun?

18      INMATE MCCURDY:  -- remember pulling the trigger on

19   that man.

20      PRESIDING COMMISSIONER DAVIS:  All those things that

21   people testified to later on, the cleaning up, the --

22      INMATE MCCURDY:  I do not remember that at all.

23      PRESIDING COMMISSIONER DAVIS:  -- disposing of the

24   body and all those other kinds of things.  Did you drive

25   that night?

26      INMATE MCCURDY:  Not that I know of.

27      PRESIDING COMMISSIONER DAVIS:  Did they say you

27

1    drove?

2        **INMATE MCCURDY:**  No.

3        **PRESIDING COMMISSIONER DAVIS:**  No, okay.  All right.

4    Commissioner, do you have any other questions?

5        **DEPUTY COMMISSIONER BLONIEN:**  No.

6        **PRESIDING COMMISSIONER DAVIS:**  All right.  I will

7    ask you to turn your attention, please, to Commissioner

8    Blonien.

9        **DEPUTY COMMISSIONER BLONIEN:**  Mr. McCurdy, this is

10   your seventh Subsequent Hearing.

11       **INMATE MCCURDY:**  Yes, Ma'am.

12       **DEPUTY COMMISSIONER BLONIEN:**  Your last appearance

13   before the Board was September 9th of '05 and the

14   decision of the Panel was for a one year denial.  They

15   recommended that you stay disciplinary free, continue

16   with self-help, and earn positive chronos.  The

17   classification score is 19, and your custody level is

18   Medium A.  So in order to do this I have read through

19   your C-File.  I have read your Psych Report by Dr.

20   Macomber, M-A-C-O-M-B-E-R, dated July 22nd of '06.  Gone

21   back and read previous Psych Reports.  I have ready your

22   Counselor Report by Counselor Arno, A-R-N-O, dated June

23   13th of '06.  You did an Olson Review of your C-File on

24   May 17th of '06.

25       **INMATE MCCURDY:**  Yes, Ma'am.

26       **DEPUTY COMMISSIONER BLONIEN:**  One of the issues they

27   talked to you about at your last hearing is you got your

28

1    GED in 1963, but there is not a copy of the GED in your

2    file.  Did you send away for it?

3          INMATE MCCURDY:  I -- I sent to Western State for

4    it, and I've never received anything back from them.

5          DEPUTY COMMISSIONER BLONIEN:  And when did you send

6    away for it?

7          INMATE MCCURDY:  Oh, right after the hearing.

8          DEPUTY COMMISSIONER BLONIEN:  Right after the

9    hearing?  It takes time sometimes.  I also had a question

10   about, at one point in your institutionalization you had

11   severe medical problems; emphysema, back problems,

12   arthritis -- you don't have any of that anymore?

13         INMATE MCCURDY:  Well, yeah, I've still got the

14   arthritis and the back problem.  Uh -- the emphysema is

15   pretty much gone away because I quit smoking two years

16   ago.  Uh --

17         DEPUTY COMMISSIONER BLONIEN:  You're lucky.

18         INMATE MCCURDY:  Very fortunate.

19         DEPUTY COMMISSIONER BLONIEN:  You really are.

20         INMATE MCCURDY:  Uh -- my brother --

21         DEPUTY COMMISSIONER BLONIEN:  Yes.

22         INMATE MCCURDY:  -- my brother died from lung

23   cancer, and he never smoked a cigarette.  But --

24         DEPUTY COMMISSIONER BLONIEN:  Yes, they say

25   secondhand smoke is worse.

26         INMATE MCCURDY:  -- yeah -- uh -- at the moment I,

27   I'm in, for 65 years old I'm in good shape.

29

1    **DEPUTY COMMISSIONER BLONIEN:**  Okay.  You have had 12

2    115's, the last 1/13 in the year 2000 for gambling.  What

3    were you gambling on?

4    **INMATE MCCURDY:**  A football pool.

5    **DEPUTY COMMISSIONER BLONIEN:**  Who is your team?

6    **INMATE MCCURDY:**  Dallas.

7    **DEPUTY COMMISSIONER BLONIEN:**  Oh, because your

8    nickname is Tex.  You had one 128 and that was failure to

9    report for work, and that was in '01.  You -- at one

10    point you were taking some of the FEMA courses --

11    **INMATE MCCURDY:**  Yes, Ma'am.

12    **DEPUTY COMMISSIONER BLONIEN:**  -- but I didn't -- I

13    didn't see the certificates.  How many did you take?

14    **INMATE MCCURDY:**  There -- they will not give us the

15    certificates.

16    **DEPUTY COMMISSIONER BLONIEN:**  Why not?

17    **INMATE MCCURDY:**  They --

18    **DEPUTY COMMISSIONER BLONIEN:**  Other inmates have

19    them.

20    **INMATE MCCURDY:**  -- well, let's say I took four --

21    four different courses.

22    **DEPUTY COMMISSIONER BLONIEN:**  Uh-huh.  And you

23    passed the test.

24    **INMATE MCCURDY:**  Yeah, I passed the test.  And I

25    sent for the recivitate, certificates and I've got a

26    letter out there somewhere stating that they no longer

27    give out certificates.

30

1      **DEPUTY COMMISSIONER BLONIEN:**  Well, in looking at

2   your C-File, you have a vocational certificate as a Meat

3   Cutter.

4      **INMATE MCCURDY:**  Yes.

5      **DEPUTY COMMISSIONER BLONIEN:**  Did you get that at

6   Mule Creek?

7      **INMATE MCCURDY:**  No, I got that at Vacaville.

8      **DEPUTY COMMISSIONER BLONIEN:**  In Vacaville.  You

9   were a -- a General Electrician for 12 years.

10      **INMATE MCCURDY:**  Yes.

11      **DEPUTY COMMISSIONER BLONIEN:**  At what institution?

12      **INMATE MCCURDY:**  Vacaville.

13      **DEPUTY COMMISSIONER BLONIEN:**  At Vacaville.  CMF?

14      **INMATE MCCURDY:**  Well, at Old Folsom and Vacaville.

15      **DEPUTY COMMISSIONER BLONIEN:**  CMF?

16      **INMATE MCCURDY:**  Yes.

17      **DEPUTY COMMISSIONER BLONIEN:**  Did you get your

18   certificate as a Forklift Operator -- you were working on

19   that.

20      **INMATE MCCURDY:**  I'm waiting on a certif. --

21   certification from Sacramento now.  I've passed all the -

22   - everything has been approved and passed.

23      **DEPUTY COMMISSIONER BLONIEN:**  You work at PIA.  You

24   are Quality Control.

25      **INMATE MCCURDY:**  Yes, Ma'am.

26      **DEPUTY COMMISSIONER BLONIEN:**  You have -- your last

27   Supervisor's Report says you are outstanding.  And your -

1    - different evaluations are always above average to

2    excellent.  So you are a great worker.

3        INMATE MCCURDY:  Well, I try to show a little pride.

4        DEPUTY COMMISSIONER BLONIEN:  You belong to the

5    Veterans Group here.

6        INMATE MCCURDY:  Yes, I do.

7        DEPUTY COMMISSIONER BLONIEN:  How many people are in

8    that Veterans Group?

9        INMATE MCCURDY:  At the moment we have -- uh -- a

10   standing -- uh -- membership of 208.

11       DEPUTY COMMISSIONER BLONIEN:  And how often do you

12   meet?

13       INMATE MCCURDY:  We meet once a month now, but we

14   are in the process of getting approved for a bi-monthly

15   meeting.

16       DEPUTY COMMISSIONER BLONIEN:  And what do you work

17   on in these meetings?

18       INMATE MCCURDY:  Uh -- things that would benefit us

19   as veterans and also we donate our money to -- whatever

20   money we raise and our funds and stuff, we donate to the

21   -- some of it goes to the local veterans group outside

22   out here.  There's a Veterans Association outside.  And

23   some of it will go to schooling here local -- community

24   that'll help the kids with their library books and

25   whatever that they -- that they need, as in, as -- as far

26   as schooling.

27       DEPUTY COMMISSIONER BLONIEN:  And, are any of your

32

1   200 plus members -- have they come from San Quentin and
2   told you about the Viet Nam Veterans Group there?
3       **INMATE MCCURDY:**  We -- we -- we discuss a lot of it.
4   Uh -- we -- I've been to several different Veterans
5   Groups.  I was with one in Vacaville and I was with one
6   in -- in Old Folsom.  And then we just got this one
7   started.  It took us three years to get it started here.
8       **DEPUTY COMMISSIONER BLONIEN:**  And are there
9   any self-help programs incorporated into your
10  Veterans Group yet?
11      **INMATE MCCURDY:**  Oh, we're -- it -- well -- it's --
12  it's all -- we consider it all self -- self-help -- but I
13  mean -- we're there for each other.
14      **DEPUTY COMMISSIONER BLONIEN:**  When you were talking
15  to Commissioner Davis your acknowledgement of your
16  tremendous alcohol problem was very forthright.  And you
17  have participated in AA while in the institution.  And
18  you also completed a program called Rational Recovery.
19      **INMATE MCCURDY:**  Yes, I did.
20      **DEPUTY COMMISSIONER BLONIEN:**  Which you remarked was
21  the best thing that ever happened to you.
22      **INMATE MCCURDY:**  It was.
23      **DEPUTY COMMISSIONER BLONIEN:**  But I -- I don't see
24  any ongoing self-help in that arena of AA lately.
25      **INMATE MCCURDY:**  I haven't.  The last year -- and
26  I'll tell you why.  I had developed a problem with -- uh
27  -- the prayer.  Uh --

33

1    **DEPUTY COMMISSIONER BLONIEN:**  Because --

2    **INMATE MCCURDY:**  Because it put the --

3    **DEPUTY COMMISSIONER BLONIEN:**  -- of --

4    **INMATE MCCURDY:**  -- honors on God instead of me.

5    I'm the one that drank.  Didn't nobody hold a gun to my

6    head and make me drink.

7    **DEPUTY COMMISSIONER BLONIEN:**  Uh-huh.

8    **INMATE MCCURDY:**  It was my decision to drink.  Uh --

9    and I'm the one that quit.  Nobody made me quit.  Nobody

10   helped me quit.  I quit by myself.

11   **DEPUTY COMMISSIONER BLONIEN:**  Well, when you were

12   talking about --

13   **INMATE MCCURDY:**  And, I --

14   **DEPUTY COMMISSIONER BLONIEN:**  -- just let me ask

15   this question and -- and then I think your answer will --

16   will answer this question, too.  In -- in '01 when you

17   were talking to -- you had your -- your psych report and

18   you were talking to Dr. Reed, you told him that you were

19   strongly committed to never drinking alcohol again.  And

20   sees the importance in attending Alcohol Anonymous both

21   now and in the future.

22   **INMATE MCCURDY:**  And I do.  I still say it.

23   **DEPUTY COMMISSIONER BLONIEN:**  But you don't do it.

24   **INMATE MCCURDY:**  I don't see it here.

25   **DEPUTY COMMISSIONER BLONIEN:**  Well, they're going to

26   have that occur in any meeting you go to.

27   **INMATE MCCURDY:**  No, it's not -- it's not only that.

34

1   There was a problem in this group.

2       **DEPUTY COMMISSIONER BLONIEN:**  There's more than one
3   group here too, I know.

4       **INMATE MCCURDY:**  I understand that.  And I've been
5   up to both groups.  My problem with the group was, I'm
6   not a, I'm not now or will I ever be -- uh -- I don't
7   know how to put this, I can't be untrue to myself.  I
8   believe I'm the one that has to control whether I drink
9   or not.  I understand there's a higher power.  I'm not
10  doubting that.  But he can't help me.  I have to do it
11  from my heart.  I have to --

12      **DEPUTY COMMISSIONER BLONIEN:**  You know --

13      **INMATE MCCURDY:**  -- do that.

14      **DEPUTY COMMISSIONER BLONIEN:**  -- I understand that.

15      **INMATE MCCURDY:**  And -- And ain't no way --

16      **DEPUTY COMMISSIONER BLONIEN:**  Sir, I also understand
17  what you told to the -- to the psych, that you're the one
18  who made the decision, but that does not always mean that
19  you can do it alone.  That sometimes all of us needs
20  support.

21      **INMATE MCCURDY:**  You know, I enjoy sitting around
22  with people that has a similar problem and discussing it.
23  But what I don't enjoy is being a hypocrite.

24      **DEPUTY COMMISSIONER BLONIEN:**  Okay, let's talk about
25  the steps.  So you don't go to meetings anymore.  Do you
26  still work through the steps --

27      **INMATE MCCURDY:**  No, I don't.

35

1      **DEPUTY COMMISSIONER BLONIEN:**  -- on your own?  When

2    you were going to AA all that time, did you ever work

3    through the steps?

4      **INMATE MCCURDY:**  I tried to be as honest with the

5    meeting and with the steps --

6      **DEPUTY COMMISSIONER BLONIEN:**  Uh-huh.

7      **INMATE MCCURDY:**  -- as I could be.

8      **DEPUTY COMMISSIONER BLONIEN:**  And, did you work

9    through the steps where you made a list of people that

10   you had harmed?

11     **INMATE MCCURDY:**  Yes, I did.

12     **DEPUTY COMMISSIONER BLONIEN:**  And did you go as far

13   as to think of ways to making amends?

14     **INMATE MCCURDY:**  I went a little further than that.

15   Some -- some of the people that I had the phones -- phone

16   numbers and stuff I've actually called and talked to

17   them.  Others I wrote to.  The ones that -- that I felt

18   would understand where I was coming from.  Now there's

19   some out there that -- that -- that I did some damage to,

20   but they're not ever going to forgive me.  And I can

21   understand that.  You know -- uh -- so I'm not gonna put

22   myself in a position to make them feel bad.

23     **DEPUTY COMMISSIONER BLONIEN:**  So is your current

24   strategy or your current thinking that if given a parole

25   date that you are strong enough in yourself that you're

26   never going to drink again?

27     **INMATE MCCURDY:**  I'll never drink again.  Never.

36

1   Never in life will I ever touch another drop of alcohol.

2   And if it ever gets to the point where that I feel that I

3   need the help, yes, I will go to a clinic or wherever.

4   I'm not above that.  I'm not downing anybody for -- for

5   being in an AA group.  Or an NA group, or whatever group

6   they need to help them with.  I'm not downing anybody for

7   that.  I just don't feel comfortable in this group.

8       **DEPUTY COMMISSIONER BLONIEN:**  Okay.  In terms of

9   self-help and therapy you previously completed the IMPACT

10  Course.

11      **INMATE MCCURDY:**  Yes, Ma'am.

12      **DEPUTY COMMISSIONER BLONIEN:**  Tell me about the

13  Rational Recovery.  When -- when was that?

14      **INMATE MCCURDY:**  Rational Recovery was in mid-90's.

15  I don't remember to be exact.

16      **DEPUTY COMMISSIONER BLONIEN:**  Was that one-on-one

17  therapy with one of the doctors?

18      **INMATE MCCURDY:**  Uh -- that was -- no -- that was --

19  that was actually a group.  Uh -- Dr. Thornton was the

20  group leader then, and I also did some one-on-one therapy

21  with Dr. Thornton.  But the Rational Recovery was like a

22  Breaking Barriers and  --- and -- uh -- an open group

23  with people in it.  Uh --

24      **DEPUTY COMMISSIONER BLONIEN:**  I'm looking at your C-

25  File, I think it was in 2000 or 2001 you were in Ad Seg

26  for a long time.  What happened there?

27      **INMATE MCCURDY:**  Uh -- that was probably part of

37

1   that -- uh -- confidential information that you have

2   there that I was not found guilty of.  There was no 115's

3   wrote on, but I did a lot of time in the hole before they

4   finally figured out that I wasn't the guy that they was

5   looking for.  So a lot of that information that -- that -

6   - that is in there, the chronos that was wrote and stuff

7   like that, you can go right on through them, and when I

8   got to CMC they went through them and they found out I'm

9   not guilty of none of that.  But I did the hold time.

10      DEPUTY COMMISSIONER BLONIEN:  So, let's look at your

11  new Psych Report.  Did you read it?

12      INMATE MCCURDY:  Yes, Ma'am.  The one from Dr. Reed

13  or from -- from -- uh -- Dr. Macomber?

14      DEPUTY COMMISSIONER BLONIEN:  Both of them.

15      INMATE MCCURDY:  Oh, okay.

16      DEPUTY COMMISSIONER BLONIEN:  I read both of them.

17  Did you read both of them?

18      INMATE MCCURDY:  I read both of them.

19      DEPUTY COMMISSIONER BLONIEN:  Dr. Macomber notes

20  that under current Diagnostic Impressions, you have no

21  mental disorder.  You have no personality disorder.

22  Although previously you had been diagnosed with Anti-

23  Social Personality Not Otherwise Specified.  No physical

24  disorder.  That's why I asked you about whether you were

25  well or not.  And gives you an extremely high Global

26  Assessment Functioning Score of 90, which means you are a

27  highly functioning individual, whether it be in prison or

38

1    in the community.  And he talks a lot about the fact that
2    you have attended AA and NA over the years.  That you
3    completed Rational Recovery and that through Rational
4    Recovery you learned how to make responsible and positive
5    decisions.

6          INMATE MCCURDY:  Yes, Ma'am.

7          DEPUTY COMMISSIONER BLONIEN:  You have a very strong
8    personality, correct?

9          INMATE MCCURDY:  Uh-huh.

10         DEPUTY COMMISSIONER BLONIEN:  And you know what you
11   think, and you say what you think.

12         INMATE MCCURDY:  Yes, Ma'am.

13         DEPUTY COMMISSIONER BLONIEN:  And so be it, right?

14         INMATE MCCURDY:  Pretty much.

15         DEPUTY COMMISSIONER BLONIEN:  And when he was
16   considering your assessment of dangerousness he noted
17   that you have had several disciplinaries for non-
18   aggressive offenses.  And I would imagine you would see
19   115's as being bad decisions on your part probably.

20         INMATE MCCURDY:  Yes, Ma'am.  At the time they were.

21         DEPUTY COMMISSIONER BLONIEN:  That you are 65 years
22   old, and in comparison to other inmates your potential
23   for dangerous behavior is definitely below average.  Is
24   that because you're 65 years old, or --

25         INMATE MCCURDY:  Well, you learn to mellow out with
26   age I suppose -- but no --

27         DEPUTY COMMISSIONER BLONIEN:  You know -- I think

39

1  you --

2      INMATE MCCURDY:  -- I think -- I think my -- my way

3  of thinking I've reversed that.  Rather than -- than

4  being the aggressive -- uh -- excuse my French -- but the

5  aggressive asshole that I used to be, I try to be a more

6  understanding person now.

7      DEPUTY COMMISSIONER BLONIEN:  But you're still

8  aggressive.

9      INMATE MCCURDY:  Well -- but not in a violent way.

10     DEPUTY COMMISSIONER BLONIEN:  And considering

11  potential for dangerous behavior when released to the

12  community, I agree with the previous evaluator that

13  stated -- I think that was -- and that was Dr. Reed,

14          "After examining all the factors in the case,

15          he poses no more risk to society than the

16          average citizen in the community, if he

17          remains alcohol free.  The conclusion is

18          supported by the administration of the Level

19          of Service Inventory Revised.  This is an

20          actuarial measure that assesses criminal

21          history -- in this case significant, alcohol

22          use -- which is also significant, current

23          adjustment, vocational achievements, and other

24          factors in prison to determine current risk

25          level.  He obtained a score of 5.0 cumulative

26          frequency for community offenders.  This score

27          means that if 100 men were released on parole,

40

1      he would be expected to do better than 95 of

2      them.   This is a very low risk level.   In

3      fact, since the actuarial measure does not

4      consider his current age, which is 65 into the

5      formula, he probably poses less risk to

6      society than the average citizen in the

7      community.   Alcohol was a significant risk

8      factor in the past.   However, currently there

9      are no significant risk factors."

10  So, are you -- I saw in the last hearing they

11  congratulated you on your marriage.   Are you still

12  married?

13          INMATE MCCURDY:   It didn't work out.

14          DEPUTY COMMISSIONER BLONIEN:   That was in '04,

15  right?

16          INMATE MCCURDY:   Yes.

17          DEPUTY COMMISSIONER BLONIEN:   So you have been

18  married six times.

19          INMATE MCCURDY:   Yes.

20          DEPUTY COMMISSIONER BLONIEN:   And --

21          INMATE MCCURDY:   We are still friends.   It just --

22  it just the marriage part of it didn't work out.   She

23  couldn't stand the stress and -- and I don't blame her.

24  It -- this is a very hard life.

25          DEPUTY COMMISSIONER BLONIEN:   Does she still come

26  visit you?

27          INMATE MCCURDY:   About once a year.   Uh --

41

1      **DEPUTY COMMISSIONER BLONIEN:**  Do you have children?

2      **INMATE MCCURDY:**  -- because she -- she lives in

3    Wisconsin now.  She moved back to Wisconsin, and -- uh --

4    she comes out about once a year, and when she comes out

5    for vacation she comes in and sees me.

6      **DEPUTY COMMISSIONER BLONIEN:**  And how many children

7    do you have?

8      **INMATE MCCURDY:**  I have four.

9      **DEPUTY COMMISSIONER BLONIEN:**  And they -- you have

10   strong relationships with them.

11     **INMATE MCCURDY:**  Yes.

12     **DEPUTY COMMISSIONER BLONIEN:**  I saw one of your

13   115's was with one of your children many years ago.

14     **INMATE MCCURDY:**  Step -- step-daughter.

15     **DEPUTY COMMISSIONER BLONIEN:**  Step-daughter, you got

16   angry at her in the -- uh -- visiting room.

17     **INMATE MCCURDY:**  Yes, Ma'am.  And I don't know if

18   you want me to go in --

19     **DEPUTY COMMISSIONER BLONIEN:**  Well I --

20     **INMATE MCCURDY:**  -- go into it, right.

21     **DEPUTY COMMISSIONER BLONIEN:**  -- let me just ask a

22   question.  Familial situations are stressful.

23     **INMATE MCCURDY:**  Yes.

24     **DEPUTY COMMISSIONER BLONIEN:**  And you are going to

25   be -- we are going to talk about your Parole Plans.  You

26   are going to go and live with your son.  And the world

27   has gone on --

42

1    INMATE MCCURDY:  Yes, it's kind of --

2    DEPUTY COMMISSIONER BLONIEN:  -- while you have been

3    here.  It's -- faster.  Kids even think they are smarter

4    now than they were before.  And here you are sort of the

5    king of the hill.  You -- you're the top of your job.

6    You're in the Veterans Group and you are well respected

7    in that.  And you have a very military demeanor.  So you

8    are going to go out and they are not going to think you

9    are so smart.  They are going to think you are an old man

10   who came out and what are we going to do with Gramps.

11   How are you going to handle the stress of all that?

12   INMATE MCCURDY:  Hopefully, I'm going to be able to

13   get in my little trailer in the back of the lot back

14   there and learn to adjust.  I've got a very loving

15   family.  I'm well-known in the community there even

16   though I have been gone for over 20 years.  I'm still

17   well-known there.  A lot of people know me.  A lot of

18   people that I worked with.  Uh -- I talk to a few of them

19   on the phone every now and then.  And even though the

20   world has gone on and left me sitting kind of in -- along

21   the sidelines, I think I can still compete and still be

22   productive.  Uh --

23   DEPUTY COMMISSIONER BLONIEN:  You have placed

24   yourself on the sidelines.

25   INMATE MCCURDY:  Yes, Ma'am, I did.

26   DEPUTY COMMISSIONER BLONIEN:  So your Parole Plans.

27   You are going to live with your son.  And he lives in

43

1  Taft.

2      **INMATE MCCURDY:**  Yes, Ma'am.

3      **DEPUTY COMMISSIONER BLONIEN:**  And where does --

4  where does he work?

5      **INMATE MCCURDY:**  He works general -- or works for

6  Western Wells Production.

7      **DEPUTY COMMISSIONER BLONIEN:**  And that's oil?

8      **INMATE MCCURDY:**  Oil field.

9      **DEPUTY COMMISSIONER BLONIEN:**  And you use --

10     **INMATE MCCURDY:**  He is a tool pusher for them.  He

11 is a supervisor for the oil field service.

12     **DEPUTY COMMISSIONER BLONIEN:**  -- and you used to

13 work in the oil field -- construction.

14     **INMATE MCCURDY:**  Yes.

15     **DEPUTY COMMISSIONER BLONIEN:**  And -- you have a job

16 offer?

17     **INMATE MCCURDY:**  Yes.

18     **DEPUTY COMMISSIONER BLONIEN:**  From?

19     **INMATE MCCURDY:**  Western Wells.

20     **DEPUTY COMMISSIONER BLONIEN:**  Western Wells?

21     **INMATE MCCURDY:**  Yes.

22     **DEPUTY COMMISSIONER BLONIEN:**  And that's an oil

23 field.

24     **INMATE MCCURDY:**  Yes.

25     **DEPUTY COMMISSIONER BLONIEN:**  Is it the same place?

26     **INMATE MCCURDY:**  Western Wells Production is the

27 same -- there -- there's two different companies.  Two

44

1    different parts of the company.  One is the construction
2    side, and one is the drilling side.  I will be working on
3    the construction side, because I know that.  That's part
4    of the -- of my skills as knowing how to make the wells
5    be producing again.
6        DEPUTY COMMISSIONER BLONIEN:  And do you know how
7    much an hour you will be making?
8        INMATE MCCURDY:  It starts out at $22.00 an hour.
9        DEPUTY COMMISSIONER BLONIEN:  Good.  And you will be
10   living in a trailer you say?
11       INMATE MCCURDY:  Yes.  My son has already bought me
12   a brand new trailer and put it on the back of the lot.
13   We have a large lot there in town.  It was originally
14   mine.  I gave it to him after I came to prison.
15       DEPUTY COMMISSIONER BLONIEN:  Oh, so he lives in the
16   house.
17       INMATE MCCURDY:  No, he lives at -- the old house is
18   gone.  They -- they pushed it down and they built all new
19   stuff.  And -- uh -- they bought -- just recently bought
20   a new trailer house --
21       DEPUTY COMMISSIONER BLONIEN:  Okay.
22       INMATE MCCURDY:  -- a new mobile home -- recent back
23   there.
24       DEPUTY COMMISSIONER BLONIEN:  And how big is your
25   mobile home?
26       INMATE MCCURDY:  It's two bedrooms.
27       DEPUTY COMMISSIONER BLONIEN:  Oh, that's nice.

45

1    INMATE MCCURDY:  Yeah.

2    DEPUTY COMMISSIONER BLONIEN:  And in terms of not

3    reverting to alcohol, your answer was --

4    INMATE MCCURDY:  I'll never drink again.

5    DEPUTY COMMISSIONER BLONIEN:  And if you --

6    INMATE MCCURDY:  Not ever.

7    DEPUTY COMMISSIONER PEREZ:  -- and if it gets

8    stressful then you will ask for help.

9    INMATE MCCURDY:  Very quickly.

10    DEPUTY COMMISSIONER BLONIEN:  What also are your

11    Parole Plans?  You know where to live.  You know where to

12    work.

13    INMATE MCCURDY:  And got a vehicle out there already

14    for me.  I just have to go get my driver's license

15    updated -- have to get them back.

16    DEPUTY COMMISSIONER BLONIEN:  And what kind of

17    vehicle?  A truck?

18    INMATE MCCURDY:  The vehicle -- truck.  Uh --

19    everything is there.  And -- uh -- just waiting on me to

20    get there.

21    DEPUTY COMMISSIONER BLONIEN:  We also sent 3042

22    Notices out to local law enforcement.

23    INMATE MCCURDY:  Uh-huh.

24    DEPUTY COMMISSIONER PEREZ:  Victim next of kin.  And

25    we just received a letter from Kern County District

26    Attorney's Office saying that they are unable to attend

27    today because no attorney is presently available because

46

1  of the heavy trial case load, but for us not to regard

2  their inability to attend as a concession that this

3  inmate is worthy of parole, or a lack of interest in the

4  case.  But with no specificity to your particular case at

5  all.

6      **INMATE MCCURDY:**  Well -- I don't know why they're

7  involved in the case since this was a plea bargain case.

8      **DEPUTY COMMISSIONER BLONIEN:**  Well, the District

9  Attorney's Office --

10      **INMATE MCCURDY:**  I -- I mean, I understand they

11  could still -- still be worried if I was some kind of a -

12  - uh -- a threat, but I'm not threat to nobody.

13      **DEPUTY COMMISSIONER BLONIEN:**  Well -- the District

14  Attorney's Office has the -- has an interest and I -- I

15  read what their interest was.  And with that I am going

16  to return it back to the Chair.

17      **PRESIDING COMMISSIONER DAVIS:**  All right, thank you.

18  So do you know where the AA Program meets --

19      **INMATE MCCURDY:**  Three blocks from where I'll be

20  living.

21      **PRESIDING COMMISSIONER DAVIS:**  Yeah?  And you plan

22  to attend there?

23      **INMATE MCCURDY:**  I will.  If that's -- if -- if --

24  that's -- if that is a criteria -- uh -- recommendation

25  from the Board for my parole -- that's what I will do.

26      **PRESIDING COMMISSIONER DAVIS:**  Well, what about you

27  - what about you personally?  I mean, we have already

47

1    talked about how -- how big a part alcohol played in not

2    only this -- this crime, but three prior prison terms.

3        INMATE MCCURDY:  Right.

4        PRESIDING COMMISSIONER DAVIS:  That has to give you

5    some indication that this is a serious issue.  So what do

6    you want to do, regardless of what the recommendations

7    are.  What -- what -- uh --

8        INMATE MCCURDY:  Oh, I'm gonna -- I'm gonna be

9    sober.  That is -- that's one thing I know.  Nobody can

10   take that away from me.  I'm gonna be sober.  I will --

11   I'm not gonna let that --

12       PRESIDING COMMISSIONER DAVIS:  And what is -- how is

13   -- what is the plans for that?  I mean, aside from just

14   making the statement here which is -- you know -- it's

15   easier to say it here because, although there's alcohol

16   available here you don't -- you can't just walk down to

17   the 7/11 and pick up a six pack, you know.

18       INMATE MCCURDY:  Well, it's probably a little bit

19   easier than that if you really want to know.  But, it's

20   on me to stay, remain alcohol free.  And like I just told

21   the lady there, if I feel that I need it, I will go to

22   the meetings.  And -- and if it's gonna become a

23   requirement -- I don't have no problem with that.

24       PRESIDING COMMISSIONER DAVIS:  No, that wasn't my

25   question.  That goes without saying that it would be a re

26   --

27       DEPUTY COMMISSIONER BLONIEN:  Let me turn the tape.

48

1    [Thereupon, the tape was turned over.]

2        **DEPUTY COMMISSIONER BLONIEN:**   Okay, we are back on

3    the record.

4        **PRESIDING COMMISSIONER DAVIS:**   As I was saying, that

5    -- uh -- I mean, that goes without saying that it would

6    be a requirement, or -- or -- but I want to know what you

7    think about that.   I mean, are you -- is that one of the

8    -- how -- where on a priority of different things that

9    you want to do when you get out is finding a sponsor and

10   getting settled in some sort of a self-help group of some

11   kind or --

12       **INMATE MCCURDY:**   Well, if I need a sponsor I've

13   already got one.   I've got a friend of mine that is --

14   that is in AA and I talk to him quite frequently.   And he

15   has offered to sponsor me.

16       **PRESIDING COMMISSIONER DAVIS:**   Good, what's --

17   what's his name?

18       **INMATE MCCURDY:**   Darryl McCommish, M-C-C-O-M-M-I-S-

19   H.   And he's been in AA, I think for probably 12 -- 15

20   years.   Him and I used to do a lot of drinking together.

21   We used to party together.

22       **PRESIDING COMMISSIONER DAVIS:**   All right.

23       **INMATE MCCURDY:**   And -- uh -- like I say, we talk on

24   the phone occasionally and -- and he's offered -- uh --

25   any help that he can give me.

26       **PRESIDING COMMISSIONER DAVIS:**   In your other prior

27   prison terms, did you take any self-help programs in any

49

1   of those prior prison terms?

2       INMATE MCCURDY:   No.

3       PRESIDING COMMISSIONER DAVIS:   No?

4       INMATE MCCURDY:   None at all.

5       PRESIDING COMMISSIONER DAVIS:   None whatsoever.

6       INMATE MCCURDY:   None was ever offered.

7       PRESIDING COMMISSIONER DAVIS:   Was there ever a

8   feeling on your part that you would not drink again based

9   on going to prison or --

10      INMATE MCCURDY:   Not until this time.

11      PRESIDING COMMISSIONER DAVIS:   How come?  What made

12  the difference this time?

13      INMATE MCCURDY:   I took a life this time.  And that

14  woke me up.  Uh -- I have to live with it now.  And -- uh

15  -- I'll never drink again.

16      PRESIDING COMMISSIONER DAVIS:   Okay.  Any other

17  questions, Commissioner?

18      DEPUTY COMMISSIONER BLONIEN:   No.

19      PRESIDING COMMISSIONER DAVIS:   All right, Ms.

20  Tardiff, questions?

21      ATTORNEY TARDIFF:   No, Sir.

22      PRESIDING COMMISSIONER DAVIS:   Closing then.

23      ATTORNEY TARDIFF:   Thank you.  In terms of Mr.

24  McCurdy's pre-incarceration history, it is fairly

25  supportive.  He had maintained steady stable employment,

26  20 years as a truck driver and 10 years in field

27  construction.  He did ultimately receive an honorable

50

1    discharge from the Army.  And his criminal history --
2    while it is significant, the majority of it was for
3    property crimes and did not involve force or violence.
4    Since he has been incarcerated he also has not had any
5    115's for force or violence.  So basically it is the
6    commitment offense that involves that type of behavior.
7    Since he has been incarcerated he has done a good
8    program.  He has the Meat Cutting vocation.  He was an
9    Electrician for 12 years, and he recently completed the
10   Forklift.  In the Furniture Factory we know he gets
11   really exceptional reports, and he is -- uh -- the
12   Quality Control Supervisor.  Also he is at Journeyman
13   level in the Furniture Manufacturing field.  He has
14   upgraded himself educationally.  In terms of self-help he
15   is currently involved in the Vets Group, and in the past
16   he has of course done his AA in Rational Recovery.  His
17   Psych Evals are supportive of release since 1993.  The
18   most current one states that his judgment was insight --
19   was in -- judgment -- judgment was intact.  His insight
20   and self awareness was excellent.  Noted he has done a
21   great deal of vocational experience in prison as well as
22   in the community.  Under substance abuse, this evaluator
23   does not think that it currently is a risk factor.  He
24   has been clean and sober now for 22 years.

25       **INMATE MCCURDY:**  23.

26       **ATTORNEY TARDIFF:**  Twenty-three.  The fact that he
27   has remained clean and sober shows his determination to

51

1   remain sober.  And it also shows good self-control.

2   Since he has not touched any alcohol in the last 23

3   years, this will not be listed as a current diagnostic

4   problem.  Under the life crime, he accepts full

5   responsibility.  While he does talk about, Mr. McCurdy

6   talks about the extreme intoxication, the psychologist

7   notes, "however he does accept total responsibility for

8   this crime.  He does not even want to blame the fact that

9   he was thoroughly intoxicated.  He stated that he is

10  responsible for his decisions."  And then, in terms of

11  his pre-criminal history, although he does have a serious

12  criminal history, all of those involved alcohol abuse and

13  property crimes.  He is, by nature, not an aggressive or

14  violent individuals -- uh -- individual, and his feelings

15  of remorse at the death of the victim appear to be quite

16  sincere and genuine.  They -- he notes that his age at 65

17  greatly reduces his risk of recidivism to the point that

18  he is probably of less risk to society than the average

19  citizen, based on the testing that has been discussed,

20  and then you factor in the age, and it even makes it

21  lower.  Concludes that alcohol is a -- was a significant

22  risk factor in the past.  However, currently there is no

23  significant risk factors.  His prognosis for successful

24  adjustment in the community is excellent.  And the '01

25  Psych Eval notes that he admits full responsibility, and

26  he appeared genuinely pentance for his crime.  It goes

27  into that there is no strong indications of sociopathy

52

1    presented during the clinical interview, and he does seem

2    genuinely pentance for his crime, no more than the

3    average citizen his violent potential. '97 it also was -

4    - uh -- current violent potential below average.  Less

5    controlled setting.  Probably maintain his gains.  '95

6    currently violent potential is below average.  In '93

7    concludes that, "violent potential in the past is

8    estimated to be greater than average based on alcohol

9    dependency and overall personality features.  He has

10   since gained insight to, at present violent potential is

11   estimated to below average for the general population and

12   has programmed commendably overall."  So they have got

13   the five Psych Evals over 13 years of getting a pretty

14   much clean bill of health in that respect.  His Parole

15   Plans -- he has got good Parole Plans.  He has a place to

16   stay.  He has a job.  Another event, he will be able to

17   get Social Security, which he should have quite a -- it

18   looks like he probably should have a good amount coming

19   in on that.  Marketable skills -- vocations -- he has

20   done PIA.  The Psych's don't think there is any risk

21   factors.  He served 24 years in CDC on this commitment

22   offense, which should be a sufficient amount of time.

23   And with that, I think that he has done just about

24   everything that he can do since he has been incarcerated

25   to make himself suitable.  Thank you.

26          **PRESIDING COMMISSIONER DAVIS:**  All right, thank you.

27   It is now your opportunity, Mr. McCurdy, to address the

53

1   Panel directly and tell us why you believe that you are

2   suitable for parole.

3      **INMATE MCCURDY:**  I -- well I firmly believe that I

4   am ready for parole.  Uh -- I have worked very hard at

5   doing what each of the Parole Panel's has asked me to do.

6   I have very diligently went about trying to do that

7   pursuit, each individual Panel as I came to them.  In

8   this last case they only asked me to maintain

9   disciplinary free.  Upgrade some chronos, self-help

10   groups and stuff.  That I've done.  I've went further

11   than that.  I have went way past that, in getting

12   everything set up on the -- as we call it -- on the

13   streets -- not only ready for me to come out there, but

14   them to be ready for me to come out there.  That's not

15   just my family, but my friends, that are in the

16   neighborhood, the community that I'm gonna be in, they

17   all know that there's a possibility that I could get out

18   now.  And they are all supportive of it.  And just the

19   immediate neighborhood up where our place is, there's

20   probably 35 to 40 families, and none of them has objected

21   to me coming back into the community.  I've made an

22   ongoing effort to familiarize them with what's going on

23   in here with me.  So that when I come back into the

24   community, they will at least know what's going on.  That

25   -- there -- they know that I'm going to be under scrutiny

26   -- uh -- that I'm gonna have to work, and I'm going to

27   have to do whatever it takes to maintain my freedom out

54

1   there.  And if that's being by myself for a little while,

2   you know, for a little time out, they understand that.

3   Uh -- as the lady said, the world has gone on.  And I've

4   been sitting still.  Uh -- the only good thing about that

5   is the oil field is still the oil field.  It's still

6   screwing the pipes together to make the oil flow.  And I

7   do know how to do it.  I worked as supervisor in the oil

8   field, and I have also worked as a roustabout in the oil

9   field.  I worked my way all the way up to supervisor in

10   it.  I'm very fortunate that the people still remember me

11   out there and remember me as a good worker.  And they are

12   willing to give me that chance to get back into the

13   field.  And all I ask of you is give me that chance.  And

14   I'm sincere in that.  Thank you.

15       **PRESIDING COMMISSIONER DAVIS:**  All right, thank you.

16   And we should clarify that in regards to the letters, I

17   don't remember covering this that --

18       **DEPUTY COMMISSIONER BLONIEN:**  Oh --

19       **PRESIDING COMMISSIONER DAVIS:**  -- there weren't

20   letters, but you have, counsel, you have personally

21   spoken with counselor -- uh --

22       **ATTORNEY TARDIFF:**  Yes.

23       **PRESIDING COMMISSIONER DAVIS:**  -- Mr. McCurdy's

24   counselor?

25       **ATTORNEY TARDIFF:**  Yes.  And he stated that he did

26   get the letters from Mr. McCurdy.  That they -- uh --

27   from his son offering housing and employment.  He got a

55

1    support letter from his mother, housing from his sister,

2    that he gave them to the secretary and that's the last

3    they have been seen.  But he said --

4        **DEPUTY COMMISSIONER BLONIEN:**  And when I went

5    through the C-File, there are no current letters, but

6    there are previous letters from your son, and your

7    sister, and your mother.

8        **INMATE MCCURDY:**  Uh-huh.

9        **DEPUTY COMMISSIONER BLONIEN:**  So those are the ones

10    that is --

11        **INMATE MCCURDY:**  Those are my closest supporters,

12    yes.

13        **PRESIDING COMMISSIONER DAVIS:**  And your son is in a

14    position to offer the employment at the oil field.

15        **INMATE MCCURDY:**  Yes.

16        **ATTORNEY TARDIFF:**  Apparently so.  And those letters

17    were like -- the one from the mother in July, so they are

18    all within the last couple of months.

19        **PRESIDING COMMISSIONER DAVIS:**  Okay, I just wanted

20    to clarify that and make sure we have that.

21        **ATTORNEY TARDIFF:**  Yes, thank you.

22        **PRESIDING COMMISSIONER DAVIS:**  All right.  Thank you

23    very much.  We will now recess for deliberations.

24                    **R E C E S S**

25                    --o0o--

26

27

56

1       CALIFORNIA BOARD OF PAROLE HEARINGS

2               D E C I S I O N

3       **DEPUTY COMMISSIONER BLONIEN:** Okay, we are back on

4    record.

5       **PRESIDING COMMISSIONER DAVIS:** Well, let the record

6    reflect that all those previously identified as being in

7    the room have returned.  This is in the matter of Kenneth

8    McCurdy, CDC number C-76230.  The Panel reviewed all

9    information received from the public and relied on the

10   following circumstances in concluding that the prisoner

11   is not suitable for parole and will pose an unreasonable

12   risk of danger to society or a threat to public safety if

13   released from prison.  We have come to this conclusion

14   first by the commitment offense.  The offense was carried

15   out in an especially callous manner.  The offense was

16   carried out in a dispassionate and calculated manner.

17   And the motive for the crime was inexplicable in relation

18   to the offense.  These conclusions are drawn from the

19   Statement of Facts wherein the prisoner for reasons still

20   best known to himself, possibly for retribution for

21   crimes alleged to have been committed against children by

22   the victim, or other reasons, today unclear due to self-

23   reported alcohol intoxication, participated in, and or,

24   orchestrated the alluring of the victim from the bar to a

25   remote location, then beat and shot the victim.  We find

26   with regard to previous record that there is an

27   **KENNETH MCCURDY   C-76230   DECISION   PAGE 1   9/7/06**

57

1    escalating pattern of criminal conduct and violence, and
2    a failure of a previous grant of parole, and a failure to
3    profit from society's previous attempts to correct
4    criminalities, specifically three terms in -- in three
5    different states' prisons. With regard to institutional
6    behavior, we find that you have programmed in a limited
7    manner during this last year. And that you have failed
8    to upgrade educationally in terms of getting your
9    verification of your GED. We want you to -- and that's
10   less serious than it sounds, but it is important --
11   that's a part of your overall package that you really
12   need to do. And writing one letter doesn't cut it. I
13   mean, usually with these kinds of things you have to be
14   persistent. So, while you, you have this GED out there,
15   that's a good thing in your favor, but you need to be
16   persistent in writing the letters to show that you have
17   pursued getting it, or at least bring a copy of the
18   letter that you sent to the Panel and say, look, I keep
19   trying and they don't -- and they won't respond to me.
20   That you have not in this last year sufficiently
21   participated in self-help. With regard to institutional
22   behavior, we find that you have one 128 A counseling
23   chrono in 2001, and 12 serious 115 disciplinary reports
24   the last of which was in 1/2000. The Psychological
25   Report dated September 2006 by Dr. Macomber is supported,
26   but conditioned upon abstinence from alcohol. With
27   **KENNETH MCCURDY  C-76230  DECISION  PAGE 2  9/7/06**

58

1    regard to Parole Plans, we find that you do have

2    appropriate Parole Plans.  You plan on living with your

3    son in Taft and working at Western Wells Production.

4    It's an oil field.  The Panel was willing to accept the

5    verbal confirmation of current support letters -- the --

6    for the residential and employment plans.  However, the

7    future residential and employment plans do need to be

8    verified and you should not depend upon future Panels

9    taking a verbal confirmation of that.  So you need to

10   make sure that you keep copies of these things.  If you

11   turn them in -- I mean, you -- you should know this.

12   This is something that you do.  You keep copies of -- of

13   very important letters like that.  With regard to the

14   3042 Notices, we know from the District Attorney from

15   Kern County was not here, however, did send a letter

16   indicating that due to the current caseload that they

17   could not attend, but do not want their lack of

18   appearance to infer any support for release.

19   Nevertheless, we do want to commend you for your work in

20   PIA, Quality Control, with outstanding -- excellent to

21   outstanding -- job ratings.  And also your activity.  So

22   your active participation in the Veterans Group,

23   specifically the group's Honor Guard Team.  This is a one

24   year denial.  The Panel recommends that you have no more

25   115's or 128's and as available that you upgrade

26   educationally, specifically, again as I said before, this

27   **KENNETH MCCURDY  C-76230  DECISION  PAGE 3  9/7/06**

59

1    is a recommendation that you continue to pursue getting

2    the verification of that GED.  That as available that you

3    attend self-help.  The Panel is not here to promote one

4    program over another.  Whether or not you attend AA is --

5    is certainly your decision.  However, the Panel does

6    expect you to be involved in some sort of self-help

7    programs, or at an absolute minimum to be doing -- or to

8    do independent reading, and prepare some sort of a book

9    report to indicate that you understand what you read, and

10   how it applies to the crime that you committed, and how

11   it will keep you from -- or help keep you from ever

12   committing a crime like this again.  That you earn

13   positive chronos, and in general, that you document and

14   keep copies of important documents regarding Parole Plans

15   or any institutional adjustment.  Commissioner, do you

16   have anything else you would like to add?

17        **DEPUTY COMMISSIONER BLONIEN:**  No.  Good luck to you.

18        **PRESIDING COMMISSIONER DAVIS:**  All right, Mr.

19   McCurdy, we wish you the best of luck.  We are adjourned.

20                          --o0o--

21   **(Adjourned)**

22

23   **PAROLE DENIED ONE YEARS**
                                       JAN 0 5 2007
24   **THIS DECISION WILL BE FINAL ON:**_____

25   **YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT**

26   **DATE, THE DECISION IS MODIFIED.**

27   **KENNETH MCCURDY  C-76230  DECISION  PAGE 4  9/7/06**

60

## CERTIFICATE AND

## DECLARATION OF TRANSCRIBER

I, SUSAN R. SHABAZZ-PARRISH, a duly designated transcriber, VINE, MCKINNON & HALL, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total ONE in number and cover a total of pages numbered 1 - 59, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY, SOLEDAD, at SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of KENNETH MCCURDY, CDC No. C-76230, on SEPTEMBER 7, 2006, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-mentioned matter and have no interest in the outcome of the hearing.

Dated OCTOBER 10, 2006, at Sacramento County, California.

_Susan R. Shabazz-Parrish_

_____
SUSAN R. SHABAZZ-PARRISH
Transcriber
**VINE, MCKINNON & HALL**

## PROOF OF SERVICE BY MAIL

### (C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
                   ) SS.
COUNTY OF MONTEREY )

I, _Kenneth D. McCurdy_ , am a resident of the State of California, County of Monterey. I am over the age of 18 years and I   am/am not   a party to the within action.

My   business/residence   address is P.O. Box 689, Soledad, California  93960-0689.

On _April 18_ , 20_07_ I served the foregoing:
_Petition for Review  (Copy)_

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid in the United States mail at Soledad, California, addressed as follows:

_District Attorney's Office_
_County of Kern_
_1415 Truxton Ave._
_Bakersfield, Ca._
_93301-5222_

There is regular delivery service by the U.S. Postal Service between the place of mailing and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this _18th_ day of _April_ , 20_07_ , at Soledad, California.

/S/ _Kenneth D. McCurdy_

## PROOF OF SERVICE BY MAIL

### (C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
                   ) SS.
COUNTY OF MONTEREY )

I, _KENNETH D. McCurdy_, am a resident of the State of California, County of Monterey. I am over the age of 18 years and I  am/~~am not~~  a party to the within action. My  business/residence  address is P.O. Box 689, Soledad, California  93960-0689.

On _April 18_____, 20_07_ I served the foregoing:
_Petition for Review_

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid in the United States mail at Soledad, California, addressed as follows:

Clerk of the Court
Supreme Court of California
303 Second Street, South Tower
San Francisco, Ca.
          94107

There is regular delivery service by the U.S. Postal Service between the place of mailing and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this _18th_ day of _April_____, 20_07_, at Soledad, California.

/S/ _Kenneth D. McCurdy_

## PROOF OF SERVICE BY MAIL

### (C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
                     ) SS.
COUNTY OF MONTEREY )

I, _Kenneth D. McCurdy_, am a resident of the State of California, County of Monterey. I am over the age of 18 years and I am/~~am not~~ a party to the within action. My business/residence address is P.O. Box 689, Soledad, California 93960-0689.

On _April 18_, 20_07_ I served the foregoing: _Petition for Review_ (Copy)

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid in the United States mail at Soledad, California, addressed as follows:

_Office of Attorney General_
_P.O. Box 944255_
_Sacramento, California 94244_

There is regular delivery service by the U.S. Postal Service between the place of mailing and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this _18th_ day of _April_, 20_07_, at Soledad, California.

/S/ _Kenneth D. McCurdy_